Freddie BATISTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 1148–92.

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1994.

Kenneth W. Smith, Paul C. Looney, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Scott A. Durfee, Susan Reasoner and Lynne Parsons, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of burglary of a vehicle under V.T.C.A. Penal Code, § 30.04. Enhanced punishment was assessed at thirteen years confinement. Appellant raised a number of claims on appeal relating to alleged ineffectiveness of his trial counsel for failing to preserve error under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the trial court's denial of a means for him to perfect this ineffective counsel claim for appeal. The court of appeals held that the record was sufficient to show appellant could not in any event have met the "prejudice" prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Hernandez v. State*, 726 S.W.2d 53 (Tex.Cr.App. 1986), and affirmed the conviction. *Batiste v. State*, 834 S.W.2d 460 (Tex.App.—Houston [14th] 1992). In his petition for discretionary review, appellant now argues he should not be required to meet the "prejudice" prong of *Strickland/Hernandez* in order to establish ineffective assistance of counsel under the Sixth Amendment and Article I, § 10 of the Texas Constitution for failure to preserve *Batson* error. We granted his petition to examine this contention. Tex.R.App.Pro., Rule 200(c)(2).

### I.

Appellant raised the issue of ineffective assistance of counsel for failure to preserve *Batson* error in a motion for new trial. The trial court denied appellant a hearing on the motion, and thus appellant was given no opportunity to establish that veniremen were indeed struck from his jury panel in violation of *Batson*. Appellant prepared a bill of exception, see 834 S.W.2d at 462–64, but the

trial court neither accepted this bill, nor filed one of its own.

On appeal appellant argued, *inter alia,* both that he suffered ineffective assistance of counsel in that his trial lawyer failed to preserve *Batson* error, and that the trial court erred in denying him a hearing or bill of exception to establish that the *Batson* objection not preserved would have been a valid one. The court of appeals rejected both claims. From the record of the trial itself the court of appeals concluded that trial counsel had indeed been deficient in failing to object on the basis of *Batson, id.,* at 466;[1] however, this deficiency could not have amounted to a violation of the Sixth Amendment or Article I, § 10 guarantees of effective assistance of counsel because in any event there was no reasonable probability that even a jury composed in part of the black veniremen that were struck would have rendered a different verdict on the evidence presented. *Id.,* at 466. Thus, the trial court could have concluded without benefit of a hearing that no ineffective assistance of counsel occurred. *Id.,* at 464–65 & 466.

In his petition for discretionary review appellant argues that the court of appeals erred to apply the "prejudice" prong of the test for ineffective assistance of counsel announced in *Strickland* and adopted by this Court in *Hernandez.* Appellant observes that when a violation of *Batson* is established on appeal, appellate courts have routinely reversed the conviction without recourse to an inquiry whether the error was harmless. E.g., *Wright v. State,* 832 S.W.2d 601 (Tex.Cr.App. 1992). Appellant contends that we should likewise decline to impose the "prejudice" prong of the test for ineffective assistance of counsel. For the reasons that follow, we reject this contention.

### II.

In essence, appellant would have this Court hold that trial counsel should be deemed ineffective *per se* if he forfeits any constitutional error that has been held immune from a harm analysis. His contention

---

1. Our grant of discretionary review in this cause does not embrace the question whether the court of appeals was correct to hold that counsel was in fact deficient. The State has not cross-petitioned on that issue, and we do not reach it today.

thus involves a confluence of constitutional principles announced in *Batson,* supra, in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and in *Strickland,* supra. We begin by examining each of these principles in turn.

### A. Batson

In the landmark case of *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880), the United States Supreme Court declared that a statute rendering blacks incompetent to serve on grand or petit juries violated a black defendant's right to equal protection under the Fourteenth Amendment. The Court reasoned by way of rhetorical question, thus:

> "It is not easy to comprehend how it can be said that while every white man is entitled to a trial by a jury selected from persons of his own race or color, or, rather, selected without discrimination against his color, and a negro is not, the latter is equally protected by the law with the former. Is not protection of life and liberty against race or color prejudice, a right, a legal right, under the constitutional Amendment? And how can it be maintained that compelling a colored man to submit to a trial for his life by a jury drawn from a panel from which the State has expressly excluded every man of his race, because of color alone, however well qualified in other respects, is not a denial to him of equal legal protection?"

100 U.S. at 309, L.Ed. at 666. In the century that followed the Court vitiated a number of state criminal prosecutions on the basis that state law or official state action effectively precluded, limited, or otherwise discriminated against service of blacks on grand or petit juries in criminal proceedings that resulted in the convictions of black defendants. E.g., *Neal v. Delaware,* 103 U.S. 370, 26 L.Ed. 567 (1881); *Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); *Cassell v. Texas,* 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950).

The Supreme Court indicated for the first time in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), that systematic use of peremptory challenges by the State to exclude blacks from petit juries in the criminal prosecution of a black defendants could likewise constitute discrimination in violation of the Equal Protection Clause. The Court expressly declined to hold in *Swain,* however, that an equal protection violation could be established by showing the prosecutor exercised his peremptory challenges in a particular case to strike black veniremen in the trial of a black defendant, in deference to the time-honored use of peremptory challenges to exclude veniremen on the basis of intuitive judgments that may defy rational explication. Twenty-one years later, in *Batson v. Kentucky,* supra, the Court reconsidered its holding in *Swain* that a violation of equal protection need be predicated on more than evidence of racial discrimination in the exercise of peremptories in a particular case. For the first time the Court held that a Fourteenth Amendment claim could be predicated on evidence that the prosecutor peremptorily struck as few as a single black veniremen in a particular case on no other basis than the unfounded assumption that he would harbor a bias in favor of a criminal defendant of his own race.

The Court observed in *Batson* that use of peremptory challenges to exclude black veniremen solely on account of their race injured not only the defendant on trial, but also the veniremen themselves, and indeed, the "entire community." 476 U.S. at 86–88, 106 S.Ct. at 1717–1718, 90 L.Ed.2d at 80–82. In speaking of the harm visited upon the defendant himself, the Court opined:

> "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. 'The very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds.' *Strauder,* supra, [100 U.S.] at 308, 25 L.Ed. 664; see *Carter v. Jury Comm'n of Greene County,* 396 U.S. 320, 330, 24 L.Ed.2d 549, 90 S.Ct. 518 (1970). The petit jury has occupied a central position in our system of justice by

safeguarding a person accused of crime against arbitrary exercise of power by prosecutor or judge. *Duncan v. Louisiana,* 391 U.S. 145, 156, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968). Those on the venire must be 'indifferently chosen,' to secure the defendant's right under the Fourteenth Amendment to 'protection of life and liberty against race or color prejudice.' *Strauder,* supra, [100 U.S.] at 309, 25 L.Ed. 664."

476 U.S. at 86–87, 106 S.Ct. at 1717–1718, 90 L.Ed.2d at 80–81 (footnotes omitted).

In cases decided since *Batson,* the Supreme Court has de-emphasized the notion that it is the defendant who suffers a violation of equal protection when members of a minority are removed from the venire by peremptory challenge on the basis of their minority status alone. Instead, in recent years the Court has conferred third party standing upon non-minorities to raise equal protection claims on behalf of the excluded minority veniremen themselves. *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Moreover, the Court has held that civil litigants also have standing to raise the equal protection rights of minority veniremen, *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), as does the State in a criminal prosecution, *Georgia v. McCollum,* 505 U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). See also *Curry v. Bowman,* 885 S.W.2d 421 (Tex.Cr.App.1993).[2] The Court has even held, albeit in context of a Sixth Amendment "fair-cross-section" claim, that peremptory exclusion of veniremen on account of race may contribute to the fairness of trial to the extent that it as likely as not contributes to the attainment of an impartial jury. *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). Cf. *Swain v. Alabama,* supra, 380 U.S. at 220–221, 85 S.Ct. at 836, 13 L.Ed.2d at 772–773 (exclusion on the basis of race helps assure impartiality of jury inasmuch as "the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or

nationality is in fact partial, but whether one from a different group is less likely to be.").

This is not to say that the Supreme Court has completely lost sight of the essential holdings of *Strauder,* and of *Batson* itself, *viz:* that racial discrimination against veniremen in the exercise of peremptory challenges violates the equal protection rights of the same-race defendant who is on trial. But the Court has never articulated exactly why this equal protection violation impugns the validity of an otherwise error-free criminal conviction. Indeed, if we are to accept at face value the Supreme Court's pronouncements that, e.g., "[r]ace cannot be a proxy for determining juror bias or competency[,]" *Powers v. Ohio,* 499 U.S. at 410, 111 S.Ct. at 1370, 113 L.Ed.2d at 424, then we must assume that even a jury from which minority veniremen have been peremptorily struck in violation of the Equal Protection Clause, if it is otherwise unobjectionable, is capable of rendering a verdict—even as to a defendant who is a member of the same minority as the veniremen wrongfully struck—that is in all things impartial. Without saying precisely how, the Court has nevertheless observed that, e.g., "racial discrimination in the selection of jurors ... places the fairness of a criminal proceeding in doubt." *Id.,* at 411, 111 S.Ct. at 1371, 113 L.Ed.2d at 425. It also "invites cynicism respecting the jury's neutrality and its obligation to adhere to the law." *Id.,* at 412, 111 S.Ct. at 1371, 113 L.Ed.2d at 426. Finally, it "call[s] in question" the makeup of the petit jury, "and the irregularity may pervade all the proceedings that follow." *Id.,* at 413, 111 S.Ct. at 1372, 113 L.Ed.2d at 426. See also, *Edmonson v. Leesville Concrete Co., Inc.,* supra, 500 U.S. at 628 & 630, 111 S.Ct. at 2087 & 2088, 114 L.Ed.2d at 678 & 679.

### B. Chapman

In *Chapman v. California,* supra, the Supreme Court refused to hold "that all federal constitutional errors, regardless of the facts

---

**2.** One commentator forcefully argues that the only "possible explanations" for "how race-based jury selection discriminates against the defendant, as distinct from the jurors" themselves, are "seriously flawed." B. Underwood, Ending Race Discrimination in Jury Selection: Whose Right Is It, Anyway?, 92 Colum.L.Rev. 725, at 728, & generally 728–736 (1982).

and circumstances, must always be deemed harmful." 386 U.S. at 21, 87 S.Ct. at 827, 17 L.Ed.2d at 709. While noting that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," *id.,* at 23, 87 S.Ct. at 827–28, 17 L.Ed.2d at 710, the Court concluded "that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction." *Id.,* at 22, 87 S.Ct. at 827, 17 L.Ed.2d at 709. Neither the Supreme Court nor this Court has ever squarely addressed the question whether *Batson* error is subject to a constitutional harm analysis.

The Supreme Court has decided that racial discrimination in the process of selecting a grand jury—an equal protection violation that also stems from the seminal holding of *Strauder v. West Virginia,* supra—is not the kind of constitutional error subject to a harm analysis under *Chapman. Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). The Court held the error to be of a sort as to call into question the objectivity of the institutional factfinder, concluding that "discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review." *Id.,* at 263–64, 106 S.Ct. at 623, 88 L.Ed.2d at 609. See *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). Cf. *Cassell v. Texas,* supra (holding that discrimination in selection of grand jury was reversible error without resort to an analysis for substantial prejudice, despite vigorous dissent by Justice Jackson arguing that the error was harmless).

Since *Vasquez* was decided, the Supreme Court has modified its vocabulary somewhat in distinguishing those constitutional defects susceptible to a *Chapman* harmless error analysis from those that are not. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The methodology for determining applicability of *Chapman* is now to categorize the constitutional violation as either "trial error" or as "structural defect." The *Chapman* test applies to that great majority of constitutional violations that fall in the category of trial error. It does not apply, however, to:

> "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards. The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant, just as it is by the presence on the bench of a judge who is not impartial. Since our decision in *Chapman,* other cases have added to the category of constitutional errors which are not subject to harmless error the following: unlawful exclusion of members of the defendant's race from a grand jury, *Vasquez v. Hillery,* [supra].... Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial itself. 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' [*Rose v. Clark* ], 478 U.S. [570], at 577–578, 106 S.Ct. [3101], at 3106, 92 L.Ed.2d [460], at 470 [ (1986) ] (citation omitted)."

499 U.S. at 309–310, 111 S.Ct. at 1265, 113 L.Ed.2d at 331. Given this language, and the fact that the description of purposeful discrimination in the selection of grand jurors in *Vasquez* itself as error that goes to the "structural integrity of the criminal tribunal," we doubt the Supreme Court will change its view of the susceptibility of jury selection procedures that violate equal protection to harmless error analysis in light of *Fulminante.*[3] We therefore assume, without

---

3. An even more recent case from the Supreme Court suggests yet another reason *Chapman* should not apply to equal protection violations in the selection of grand and petit juries. In *Sullivan v. Louisiana,* 508 U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court held that error in properly charging a jury in a criminal trial on the State's burden of proof is not subject to harmless error analysis. Besides finding such a defect "certainly" structural, the Court also held *Chapman* inapplicable by operation of an independent "mode of analysis." 508 U.S. at

deciding, that *Batson* error is not amenable to a *Chapman* analysis for harmless error.

## C. *Strickland*

Whether the Supreme Court would also hold that defense counsel's failure to assert *Batson* error is not subject to the "prejudice" prong of the test for ineffective assistance of counsel under *Strickland v. Washington,* supra, however, is a different matter. In *Strickland* the Supreme Court held that in order to make out a Sixth Amendment claim of ineffective assistance of counsel, the defendant must show both that his lawyer was deficient, and that:

> "the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable."

466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Elaborating on the latter, "prejudice" prong of ineffective counsel, the Court observed that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.,* at 693, 104 U.S. at 2067, 80 L.Ed.2d at 697. Instead, the defendant must show that:

> "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.,* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

At one point in its opinion in *Strickland* the Supreme Court characterized the "prejudice" prong as a "general requirement." *Id.,* at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. The Court acknowledged that with some varieties of Sixth Amendment violation, such as the actual or constructive denial of counsel altogether at a critical stage of the criminal proceeding, or an actual conflict of interest on the part of defense counsel, prejudice is presumed. This is because "[p]rejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost." *Id.,* at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. Appellant contends that al-

---

——, 113 S.Ct. at 2083 & 2082, 124 L.Ed.2d at 191 & 190. The Court reasoned that the harmless error inquiry that *Chapman* envisioned:

> "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee."

*Id.,* at ——, 113 S.Ct. at 2081–2082, 124 L.Ed.2d at 189 (emphasis in the original). The Court concluded that a jury misdirected as to the proper burden of proof is not the "jury" the Sixth Amendment guarantees; that the error "vitiates all the jury's findings." *Id.,* at ——, 113 S.Ct. at 2082, 124 L.Ed.2d at 190 (emphasis in the original). An appellate court purporting to conduct a harmless error analysis in the premises:

> "can only engage in pure speculation—its view of what ·a reasonable jury would have done. And when it does that, 'the wrong entity judge[s] the defendant guilty.' *Rose,* supra, 478 U.S., at 578, 106 S.Ct., at 3106, 92 L.Ed.2d, at 471."

*Id.,* 508 U.S. at ——, 113 S.Ct. at 2082, 124 L.Ed.2d at 190. For this reason, also, the Court held that error in defining the State's burden of proof in the jury charge was not subject to the *Chapman* test.

By analogous reasoning, a jury from which members of the defendant's own minority race have been discriminatorily removed is not the "jury" guaranteed by the Equal Protection Clause, under *Batson.* For a reviewing court to hypothesize what a properly composed jury would have done is once again to allow the wrong entity to adjudge the accused. In short, whether because it is a "structural defect," or in order to avoid appellate verdicts of guilt, we are fairly confident that the Supreme Court, if squarely presented with the issue, would hold that discriminatory use of peremptory challenges in the selection of the petit jury, in violation of a defendant's equal protection rights under *Batson,* is not subject to the *Chapman* test for harmless constitutional error. Cf. *Cassell v. Texas,* supra, 339 U.S. at 301–302, 70 S.Ct. at 639, 94 L.Ed. at 855 (Jackson, J., dissenting) (although discrimination in selection of grand jury ought to be subject to scrutiny for substantial prejudice, discrimination in selection of petit jury may result in jury with "unconscious and conscious prejudices and preferences—and a thousand things we cannot detect or isolate in its verdict and whose influence we cannot weigh.").

lowing the State to use racially discriminatory criteria in the exercise of its peremptory challenges in picking his petit jury introduced a "structural" defect into his trial, and this means that counsel's failure to preserve *Batson* error was a deficiency so likely to result in the denial of a fair trial that we should declare it also to be exempt from the "prejudice" prong of *Strickland.* To this contention we now turn.

### III.

In effect appellant would have us hold that failure to preserve any "structural defect" of constitutional dimension is so likely to skew the fairness of trial that case by case determination of the ultimate fairness of any individual trial is not worth the candle. While many structural defects might in fact so adversely impact ultimate fairness of the trial as to justify presuming prejudice, we decline to hold that every structural defect is therefore *per se* exempt from the "prejudice" prong of *Strickland.* In particular, we hold that the likelihood that failure of counsel to ensure that racial discrimination did not take place in jury selection will render trial unfair is not so great as to justify exempting ineffective counsel claims for lack of a *Batson* objection from *Strickland's* "prejudice" prong.

Appellant argues that the common goal of both the equal protection guarantee that members of an accused's race are not excluded from jury service because of their race and the Sixth Amendment guarantee of effective assistance of counsel is the fairness of trials. *Strickland* does indeed recognize that the Sixth Amendment right to effective assistance of counsel exists in order to guarantee the fairness of trial. By this the Supreme Court in *Strickland* meant that competent counsel is necessary to ensure that our adversarial system of criminal justice operates in the way it was envisioned, so that we may be confident the results are reliable. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d

at 692–693. For Sixth Amendment purposes, "a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Id.,* at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692.

■ Judged by this standard, we do not think failure to preserve *Batson* error so invariably detracts from the fairness of trial as to justify exempting it from the "prejudice" prong of *Strickland.* The possibility of racial prejudice in the selection of the petit jury affects the adversarial presentation of the case not at all. If anything, it affects only the makeup of the tribunal that hears and adjudges that presentation. As we have said, the Supreme Court has given little indication exactly how *Batson* error renders the tribunal "unfair" to the defendant. We know that discrimination in jury selection "places . . . fairness . . . in doubt[,]" "invites cynicism respecting the jury's neutrality[,]" and "call[s] in question" the composition of the petit jury. See *Powers v. Ohio & Edmonson v. Leesville Concrete Co. Inc.,* both supra. But we also know from *Holland v. Illinois,* supra, that permitting the adversaries to use race as a basis for selecting those "less likely to be" partial to the other side may actually enhance the impartiality of the tribunal. In any event, if race is not an allowable "proxy" for bias, *Powers v. Ohio,* supra, 499 U.S. at 410, 111 S.Ct. at 1370, 113 L.Ed.2d at 424, we can only conclude that an all white jury— whether it is the product of chance or of racial discrimination in the exercise of peremptory challenges—can nevertheless render a fair and impartial verdict in the trial of a minority defendant. Even if *Batson* has some intangible effect on the impartiality of the tribunal (by, e.g., removing any apparent judicial imprimatur upon racial discrimination that might communicate to jurors that race is an acceptable basis for decision), at best it merely:

"joins other procedures [*viz:* challenge for cause practice, and instructions to the jury that it should eschew passion or prejudice in the deliberative process] that protect a defendant's interest in a neutral factfinder. Those other mechanisms existed prior to [the] decision in *Batson,* creating a high

probability that the individual jurors seated in a particular case were free from bias."

*Allen v. Hardy,* 478 U.S. 255, at 259, 106 S.Ct. 2878, at 2880–2881, 92 L.Ed.2d 199, at 205 (1986) (footnote omitted). In view of the speculative (at best) impact of discriminatory use of peremptory challenges upon the impartiality of the jury, and the presumed efficacy of "other mechanisms" to insure jury neutrality, we cannot say that a breakdown in the adversarial process from failure to raise *Batson* error at trial is so likely that an individualized assessment of the fairness of the particular trial is "not worth the cost."[4]

Appellant cites *Lockhart v. Fretwell,* 506 U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), for the proposition that counsel's failure to preserve *Batson* error always deprives an accused of a fair trial. In *Fretwell* the Supreme Court observed that "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." 506 U.S. at ——, 113 S.Ct. at 844, 122 L.Ed.2d at 191. Reasoning conversely from this observation, appellant argues that because he was deprived of the assurance of a jury picked absent the pernicious influence of racial discrimination, his trial was both unreliable and unfair. But we do not take the Supreme Court to have meant in *Fretwell* that any time a deficiency of counsel actually operates to deprive an accused of a substantive or procedural right, he has necessarily been deprived of a fair trial, so as to justify a presumption of prejudice. Were this the case, then failure of counsel to raise, e.g., a valid hearsay objection would by itself call for a finding of ineffective assistance of counsel under the Sixth Amendment, without recourse to a particular assessment of prejudice.

Appellant also cites *Ex parte Yelder,* 575 So.2d 137, at 139 (Ala.1991), in which the Supreme Court of Alabama held that "the failure of trial counsel to make a timely *Batson* objection to a prima facie case of purposeful discrimination by the State in the jury selection process through its use of peremptory challenges is presumptively prejudicial to a defendant." The Court so held on the strength of a dissenting opinion in the lower appellate court in the same case. There Judge Bowen had opined:

> "As *Batson* itself indicates, and outcome-determinative test simply is not appropriate for a fourteenth amendment juror discrimination claim. If it *were* used, no appellant could ever prove prejudice without relying on the pernicious assumption that *Batson* condemns, that is, that if blacks had not been struck from a black defendant's jury, the defendant would more likely have been found not guilty."

*Yelder v. State,* 575 So.2d 131, at 136 (Ala.Cr. App.1990) (Bowen, J., dissenting) (emphasis in the original). We think this reasoning is flawed. It is simply another way of articulating the basic premise of *Batson, viz:* that the Fourteenth Amendment tolerates no assumptions about juror competence or impartiality, or the lack thereof, on account of race. But if that premise is correct, we see no impediment whatsoever to imposing an outcome-determinative test in deciding whether counsel's failure to raise *Batson* rendered the trial "unfair" under the Sixth Amendment. A jury of any racial makeup is presumptively capable of providing the impartial tribunal necessary to ensure proper functioning of the adversarial process. That no defendant may "ever prove prejudice" is a better reason, it seems to us, to reject a standard of presumed prejudice than to embrace it. We do not find the opinions in *Yelder* persuasive.

4. Appellant does not make the argument suggested by our note 3, *ante, viz:* that the prejudice a defendant suffers in every case in which a jury is selected under discriminatory criteria is that he is deprived of the "jury" equal protection guarantees him. Cf. *Sullivan v. Louisiana,* supra. In any event, we would reject such an argument. For in our view, as long as discrimination does not adversely impact impartiality of the jury, *Holland v. Illinois,* supra, there has been no breakdown in the adversarial process so as to impugn the "fairness" of the trial for Sixth Amendment effective assistance of counsel purposes. Thus, while *Sullivan* may provide an alternative basis for arguing *Batson* error should not be subject to a *Chapman* harm analysis, we do not think it militates in favor of exempting failure to raise *Batson* timely from the "prejudice" prong of *Strickland.*

■ We conclude that the court of appeals did not err to subject appellant's claim of ineffective assistance of counsel for failing to raise *Batson* error to the "prejudice" prong of *Strickland*.[5] Because that is the only question we granted discretionary review in this cause to examine, we leave its other holdings intact. Accordingly, we affirm the judgment of the court of appeals.

BAIRD, Judge, dissenting.

In this case two significant and complex Constitutional doctrines collide, namely, the right to effective assistance of counsel guaranteed by the Sixth Amendment and the right to a fairly selected jury under the Equal Protection Clause of the Fourteenth Amendment. The majority diminishes the effectiveness of both of these Constitutional doctrines with the mechanical application of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to violations of the Equal Protection Clause recognized in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Therefore, I respectfully dissent.

## I.

## AN OVERVIEW OF RACIAL DISCRIMINATION IN THE JURY SELECTION PROCESS

More than a century ago in *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880), the United States Supreme Court took the first step toward abolishing racial discrimination in jury selection. Strauder, a black defendant, was indicted for murder and challenged the composition of his jury because a West Virginia statute made blacks ineligible for jury service. *Id.*, at 304–05, 25 L.Ed. 664. Strauder was convicted by an all-white jury. *Id.* In one of its earliest opinions interpreting the Equal Protection Clause, the Supreme Court held the West Virginia statute unconstitutional. *Id.*, at 310, 25 L.Ed. 664.

Unfortunately, *Strauder* did not end racial discrimination in jury selection; minorities were still excluded from juries with the use of peremptory challenges. In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court addressed the use of peremptory challenges to exclude minorities. Swain was indicted for rape. 380 U.S. at 203, 85 S.Ct. at 826. Eight members of his venire were black. Two were exempt from jury service, and the prosecutor removed the remaining black veniremembers with peremptory challenges. *Id.*, 380 U.S. at 205, 85 S.Ct. at 828. As a result, Swain was convicted and sentenced to death by an all-white jury. *Id.*, 380 U.S. at 203, 85 S.Ct. at 826. Swain contended the State's use of peremptory challenges to exclude black veniremembers violated the Equal Protection Clause. *Id.*, 380 U.S. at 210, 85 S.Ct. at 830. The Supreme Court agreed. *Id.*, 380 U.S. at 203–04, 85 S.Ct. at 826. However, the Court believed that allowing a defendant to attack a prosecutor's use of peremptory challenges in an individual trial vitiated the purposes behind peremptory challenges. *Id.*, 380 U.S. at 221–22, 85 S.Ct. at 836–37. Because the Court believed the peremptory challenge to be an important part of our jury trial system, *id.*, 380 U.S. at 212–20, 85 S.Ct. at 831–36, it refused to hold that the exclusion of blacks

---

5. We note that the incidental effect of our holding today is to preserve prior holdings in, e.g., *Mathews v. State*, 768 S.W.2d 731 (Tex.Cr.App. 1989), that *Batson* error is subject to principles of ordinary procedural default. Barring re-examination of *Mathews* in light of *Marin v. State*, 851 S.W.2d 275 (Tex.Cr.App.1993), it supports the proposition that failure to object to prosecutorial use of peremptory challenges to exclude veniremen on the basis of race before the jury is sworn forfeits a defendant's chance to obtain a hearing at which the prosecutor can offer race-neutral explanations to rebut his prima facie case, if any, of purposeful discrimination. A ruling today that failure to so object is not subject to the "prejudice" prong of *Strickland* would effectively vitiate our holding in *Mathews*. A

defendant would be entitled to a *Batson* hearing well after the jury was sworn, in the guise of a hearing on his claim of ineffective assistance of counsel. Unless the trial court upon motion for new trial, or the appellate court later, could determine that failure to raise *Batson* error did not, in any event, prejudice the defendant, a belated *Batson* hearing would be required, either at the motion for new trial hearing, or upon an abatement of the appeal, any time the *Batson* claim was procedurally defaulted during voir dire. Although a *Batson* claim *per se* would be forfeited, defendants would always obtain a hearing anyway, and as long as purposeful discrimination is shown, they would obtain a new trial. The requirement of a contemporaneous objection would become meaningless.

from a single jury violated the Equal Protection Clause. *Id.,* 380 U.S. at 221, 85 S.Ct. at 836. Instead, the Court held a defendant must prove the *systematic* use of peremptory challenges in a discriminatory fashion over a period of time. *Id.,* 380 U.S. at 227, 85 S.Ct. at 839.

The burden of proof created in *Swain* made it extremely difficult for defendants to prove an equal protection violation, and the Court reexamined the burden in *Batson.*[1] The Supreme Court lowered the burden by holding a defendant can "establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. Under *Batson,* a defendant need only demonstrate that he is "a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove ... members of the defendant's race." *Id.* (citation omitted). With this showing, an inference of racial discrimination is raised. *Id.* The burden then shifts to the State to rebut the defendant's prima facie case by articulating race-neutral explanations for its challenges. *Id.,* 476 U.S. at 97, 106 S.Ct. at 1723. Although the Court was concerned with the effect of its decision on the peremptory challenge, *id.,* 476 U.S. at 97–99, 106 S.Ct. at 1723–24, this concern yielded to the Court's desire to "enforce[ ] the mandate of equal protection and further[ ] the ends of justice." *Id.,* 476 U.S. at 99, 106 S.Ct. at 1724.

In recent years, the Supreme Court has expanded its decision in *Batson* in several significant ways. *See, Curry v. Bowman,* 885 S.W.2d 421 (Tex.Cr.App.1993) First, in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Court eliminated the "race identity" requirement; a defendant may now challenge the exclusion of veniremembers of any race, not simply those of his own race. *See also, Cook v. State,* 858 S.W.2d 467, 471–72 (Tex.Cr.App.1993). Second, in *Edmonson v. Leesville Concrete Company, Inc.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Court held litigants in *civil* cases may not use the peremptory challenge as a discriminatory tool. Finally, in *Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Court held the Equal Protection Clause prohibits discriminatory use of peremptory challenges by not only the State, but also the *defendant.*[2] This overview demonstrates that "[o]ver the last century, in an almost unbroken chain of decisions, [the Supreme] Court gradually has abolished race as a consideration for jury service." *McCollum,* —— U.S. at ——, 112 S.Ct. at 2352; *see also, Batson,* 476 U.S. at 89, 106 S.Ct. at 1719.[3]

## II.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees, *inter alia,* a defendant in a criminal trial shall "have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." Schaefer, *Federalism and State Criminal Procedure,* 70 Harv.L.Rev. 1, 8 (1956). Sixth Amendment jurisprudence has evolved to en-

1. The facts in *Batson* are similar to those in *Swain:* Batson was a black man indicted for burglary and receipt of stolen goods, and the prosecutor used peremptory challenges to strike every black veniremember. *Batson,* 476 U.S. at 82–83, 106 S.Ct. at 1715.

2. The Court held a defendant's use of peremptory challenges constitutes state action because it determines the composition of the jury, a governmental body. 500 U.S. at 620–29, 111 S.Ct. at 2083–87.

3. The Court has also held a defendant's Fourteenth Amendment rights are violated if the grand jury which indicted him was chosen by discriminatory means, *Neal v. Delaware,* 103 U.S. (13 Otto) 370, 26 L.Ed. 567 (1881), or if discrimination played a part in selection of the grand jury foreman. *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). In addition, the Court recently held the *Batson* rationale prohibits gender-based peremptory challenges. *J.E.B. v. Alabama ex rel. T.B.,* —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). These decisions, though not precisely on point, further demonstrate a commitment to the eradication of discrimination in jury selection.

compass three primary types of ineffective assistance of counsel claims. First, a defendant's Sixth Amendment rights are violated when he has no attorney. *See, e.g., Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding criminal defendants are constitutionally entitled to counsel, even if counsel must be appointed for indigent defendants at State's expense). Second, the Sixth Amendment is violated when the government adversely affects an attorney's ability to perform his duties. *See, e.g., Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (holding unconstitutional a ban on attorney-client consultation during overnight recesses). Finally, the Sixth Amendment is violated in actual ineffectiveness cases when an attorney commits serious errors at trial which prevent him from "functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

In *Strickland,* the Supreme Court formulated a general two-prong test to determine whether counsel actually rendered ineffective assistance: [4]

> ... First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.,* 466 U.S. at 687, 104 S.Ct. at 2064.

However, certain types of errors are considered so serious that prejudice is *pre-*

sumed. *Id.,* 466 U.S. at 692, 104 S.Ct. at 2067; *see also United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984). In cases involving those errors, a defendant is not required to affirmatively prove prejudice under the second prong of the *Strickland* test. In a denial of counsel case, and in certain types of government interference cases, we presume prejudice because "prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. The Supreme Court also recognized that a "more limited" presumption of prejudice will apply when a defendant alleges actual ineffectiveness based on counsel's conflict of interest. *Id.* However, the Court hesitated to presume prejudice in all actual ineffectiveness cases. *Id.,* 466 U.S. at 693, 104 S.Ct. at 2067. Today we are asked whether a *Batson* violation of the Equal Protection Clause is an error serious enough to warrant a presumption of prejudice under *Strickland.*[5] For the following reasons, I believe that question should be answered in the affirmative.

## III.

## WHY PREJUDICE MUST BE PRESUMED

### A.

In declining to presume prejudice in all cases of actual ineffectiveness, the Supreme Court stated:

> Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a

---

**4.** We explicitly adopted the *Strickland* formulation in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Cr.App.1986).

**5.** The Court of Appeals found the first prong of *Strickland* was met; trial counsel was deficient in not raising a timely *Batson* objection. *Batiste v. State,* 834 S.W.2d 460, 466 (Tex.App.—Houston [14th Dist.] 1992). As noted by the majority, the State does not challenge that finding, majority op., pg. 10, n. 1, and we do not review that finding today. However, it should be noted that counsel was actually ineffective *only* if he failed

to raise what would have been a meritorious *Batson* objection. *See, Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986). For the purposes of this opinion we assume a *Batson* objection would have been meritorious.

Further, contrary to the majority's assertion, we are not asked to hold "that trial counsel should be deemed ineffective *per se* if he forfeits any constitutional error that has been held immune from a harm analysis." Majority op., pg. 10; *see also,* Majority op., pg. 14. As noted above, the issue in this case is very narrow.

general requirement that the defendant affirmatively prove prejudice.... Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid.

*Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067. Concern over the uncertainty of harm and the inability to define deficient conduct is warranted in many situations, but such concern is unjustified in the face of a *Batson* violation.

When dealing with *Batson* violations, prejudice is certain. The Supreme Court has recognized three primary types of harm attributable to race-based peremptory challenges. First, the Court has recognized that peremptory challenges based on race violate the equal protection rights of the excluded veniremember. *Powers,* 499 U.S. at 409, 111 S.Ct. at 1370. "As long ago as *Strauder* ... the Court recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror." *Batson,* 476 U.S. at 87, 106 S.Ct. at 1718. This is so because the exclusion of an otherwise qualified veniremember because of race "is practically a brand upon [him], affixed by the law, an assertion of [his] inferiority." *Strauder,* 100 U.S. at 308.

Second, race-based peremptory challenges harm the defendant. Even though the initial equal protection violation attaches to the excluded veniremember, the defendant is granted third party standing to assert the veniremember's equal protection rights because the defendant is also injured. *Powers,* 499 U.S. at 409–412, 111 S.Ct. at 1370–71. To determine whether a litigant has standing to raise claims properly belonging to third parties, the Court considers, *inter alia,* whether "the litigant [has] suffered an 'injury-in-fact'." *Id.,* 499 U.S. at 411, 111 S.Ct. at 1370. The *Powers* Court identified two distinct injuries to defendants. Race-based peremptory challenges injure the defendant because they violate his equal protection rights.

*Id.,* 499 U.S. at 403, 111 S.Ct. at 1367. The practice also harms the defendant because "[t]he jury acts as a vital check against wrongful exercise of power by the State and its prosecutors. The intrusion of racial discrimination into the jury selection process damages both the fact and the perception of this guarantee." *Id.,* 499 U.S. at 411, 111 S.Ct. at 1371 (citations omitted). Essentially, "the composition of the trier of fact itself is called in question, and the irregularity may pervade all the proceedings that follow." *Id.,* 499 U.S. at 413, 111 S.Ct. at 1372.

Third, discriminatory jury selection procedures harm the integrity of our criminal justice system. As the *Batson* Court recognized, "[s]election procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." *Batson,* 476 U.S. at 87, 106 S.Ct. at 1718. *See also, Rose v. Mitchell,* 443 U.S. 545, 555, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979) ("Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice."). As the *Powers* Court explained:

... Active discrimination by a prosecutor during [the jury selection] process condones violations of the United States Constitution within the very institution entrusted with its enforcement, and so invites cynicism respecting the jury's neutrality and its obligation to adhere to the law.... A prosecutor's wrongful exclusion of a juror by a race-based peremptory challenge is a constitutional violation committed in open court at the outset of the proceedings. The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause.

*Powers,* 499 U.S. at 412, 111 S.Ct. at 1371.

Consequently, it is clear that a *Batson* violation is closely akin to those types of error where prejudice is presumed. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067. Contrary to the majority's assumption that the impact of this error is "speculative (at best)", majority op. pg. 15, a *Batson* violation

causes three distinct and serious types of harm.[6]

The *Strickland* Court also declined to presume prejudice in most actual ineffectiveness cases because the Court believed it would be too difficult to define and give notice of the types of conduct attorneys should avoid. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067. Attorneys are frequently called upon to make strategic decisions. The Court believed it unfair to evaluate a strategic decision using hindsight and then punish the attorney for making the "wrong" decision. *Id.,* 466 U.S. at 690–91, 104 S.Ct. at 2066. This reasoning is applicable when, to use the majority's example, an attorney decides not to raise a possible hearsay objection. Majority op. pg. 16.

However, when an attorney chooses not to make a meritorious *Batson* objection, this reasoning is simply inapplicable. The type of conduct to be avoided can be defined quite easily: inaction in the face of racial discrimination. If the prosecutor removes all black veniremembers with peremptory challenges, or if he removes a single black veniremember after minimal or nonexistent voir dire, defense counsel should never stand idly by. He should make a *Batson* objection and require the prosecutor to give race-neutral explanations for these challenges.

Further, the Supreme Court's opinions in this area demonstrate that racial discrimination in jury selection is not properly a matter of strategy. When an attorney makes a stra-tegic choice, he takes a calculated risk in order to assist his client. However, overt discrimination will never assist a defendant. As explained above, the defendant "suffers a real injury when the prosecutor excludes jurors ... on account of race." *Powers,* 499 U.S. at 413, 111 S.Ct. at 1372.

**B.**

The Supreme Court of Alabama is the only court which has previously considered whether prejudice should be presumed under *Strickland* when dealing with *Batson* violations. *Ex parte Yelder,* 575 So.2d 137, 139 (Ala.1991), *cert. denied,* 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991). That court identified another problem which arises when we require a defendant to affirmatively prove prejudice. If a defendant must meet an outcome-determinative standard in order to prove prejudice, he is, "in effect, relying on the very assumption *Batson* condemns." *Yelder,* 575 So.2d at 139. In other words, if a defendant challenges the exclusion of black veniremembers on the basis of race, he must prove that "had blacks not been unfairly removed from his jury, the factfinder might have acquitted him." *Id.* The assumption underlying this argument is that blacks as a group harbor particular views—views which would have caused them to react differently to the evidence presented at trial. Because the majority refuses to presume prejudice, the majority requires that the defendant prove the same stereotype condemned by *Batson.*[7]

---

**6.** The majority apparently believes it wrong to "accept at face value the Supreme Court's pronouncements" regarding the harmful effects of race-based peremptory challenges on the fairness of a trial. Majority op., pg. 12. According to the majority, the Supreme Court has never said "precisely how" the fairness of a trial is jeopardized by a *Batson* violation. *Id.* However, the majority cites several cases in which the Court has clearly described the unfairness which results. *Id.* These cases forcefully demonstrate the seriousness of *Batson* error and the certainty of harm, and appellant is unquestionably entitled to rely on them.

**7.** The majority makes the same error as the court of appeals in utilizing a strict outcome-determinative standard. *See, Batiste v. State,* 834 S.W.2d at 466. Such a standard was explicitly rejected by the *Strickland* Court. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. *Strickland* re-quires only that a defendant show a "reasonable probability ... the result of the proceeding would have been different." *Id.* A reasonable probability is a "probability sufficient to undermine the confidence in the outcome." *Ibid. See also, Lockhart v. Fretwell,* — U.S. —, —, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) ("[A]n analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

However, even if the second prong of *Strickland* was applicable and properly applied, appellant could show prejudice. By failing to rid the case of *Batson* error, trial counsel's deficient performance was sufficient to undermine our confidence in the proceedings because "[r]ace discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there." *Edmonson,* 500 U.S. at

The majority recognizes this paradox but glosses over the issue without offering a solution. The majority simply states, "a jury of any racial makeup is presumptively capable of providing the impartial tribunal necessary to ensure proper functioning of the adversarial process." Majority op., pg. 16. The majority fails to recognize this assumption is only valid if the "jury of any racial makeup" was fairly selected. If the jury was not fairly selected, and the veniremembers witnessed overt discrimination in the courtroom, they may be more likely to engage in discrimination of their own. As the Supreme Court stated in *Powers*, "[t]he purpose of the jury system is to impress upon the criminal defendant and the community as a whole that a verdict of conviction or acquittal is given in accordance with the law by persons who are fair. The verdict will not be accepted or understood in these terms if the jury is chosen by unlawful means at the outset." 499 U.S. at 413, 111 S.Ct. at 1372. As the *Yelder* court noted, "*Strickland* was decided two years before *Batson*, so it did not anticipate claims of alleged ineffectiveness in the context of the *Batson* issue. Had *Strickland* anticipated that issue, . . . it would have included that issue as one of those in regard to which prejudice is presumed." *Yelder*, 575 So.2d at 139.

### IV.

The majority's refusal to presume prejudice is also puzzling in light of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In *Chapman*, the Supreme Court held some constitutional errors "may, consistent with the Federal Constitution, be deemed harmless." *Chapman*, 386 U.S. at 22, 87 S.Ct. at 827. However, *Fulminante* makes clear that some errors are so serious they are not subject to harmless error analysis; harm is presumed. These types of errors are known as "structural defects." Significantly, the *Fulminante* Court used racial discrimination in the selection of a grand jury as an example of a structural defect. *Fulminante*, 499 U.S. at

310, 111 S.Ct. at 1264–65 (citing *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)).

The majority analyzes these two cases and "assume[s], without deciding, that *Batson* error is not amenable to a *Chapman* analysis for harmless error." Majority op. pg. 13–14. Despite that conclusion, the majority draws a feeble distinction between *Fulminante* and *Strickland*. Obviously, harmless error and ineffective assistance of counsel are two distinct issues, but the underlying gravity of *Batson* error is not altered by the context in which the error is presented. I believe the Supreme Court's willingness to label racial discrimination in grand jury selection a structural defect, *Fulminante*, 499 U.S. at 310, 111 S.Ct. at 1264–65, is a clear indication of the need to presume harm under *Strickland* when defense counsel's ineffectiveness permits racial discrimination in petit jury selection. A structural defect affecting the "integrity of the criminal tribunal itself," *Vasquez*, 474 U.S. at 263–64, 106 S.Ct. at 623, cannot be viewed as anything but harmful and prejudicial to the defendant. It is unclear how the majority concludes otherwise.

The majority is also concerned with ensuring the finality of criminal convictions. It fears "[a] defendant would be entitled to a *Batson* hearing . . . in the guise of a hearing on his claim of ineffective assistance of counsel," majority op., pg. 17, n. 5, and "[t]he requirement of a contemporaneous objection would become meaningless." *Id.*, at 17, n. 5. The majority contends an "incidental effect" of its holding is to "preserve prior holdings . . . that *Batson* error is subject to principles of ordinary procedural default." *Id.*, at 17, n. 5 (citation omitted).

The majority's concern is misplaced. The defendant who raises a claim of ineffective assistance based on counsel's failure to make a meritorious *Batson* objection is not attempting to circumvent procedural requirements in order to later obtain equal protection of the laws. Rather, he is seeking direct "protection of his personal right to effective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 377, 106 S.Ct. 2574, 2584,

---

628, 111 S.Ct. at 2087. In other words, the appellant suffered a real injury when the prosecutor excluded potential jurors because of their race. *Powers*, 499 U.S. at 413, 111 S.Ct. at 1372.

91 L.Ed.2d 305 (1986). It is crucial to recognize that "while defense counsel's failure to make a timely ... motion is the primary manifestation of incompetence and source of prejudice ... the two claims are nonetheless distinct." *Id.*, 477 U.S. at 374, 106 S.Ct. at 2582. As the *Kimmelman* Court noted in its consideration of an ineffective assistance of counsel claim based on failure to preserve a meritorious Fourth Amendment issue:

> We have no reason to believe that defense attorneys will 'sandbag'—that is, consciously default or poorly litigate their clients' Fourth Amendment claims in state court in the hope of gaining more favorable review of these claims in Sixth Amendment federal habeas proceedings.... *[I]t is virtually inconceivable that an attorney would deliberately invite the judgment that his performance was constitutionally deficient.*

*Kimmelman*, 477 U.S. at 382 n. 7, 106 S.Ct. at 2587 n. 7 (emphasis added). The same can be said about an attorney who fails to make a meritorious *Batson* objection. Thus, the majority's fears regarding the finality of convictions are groundless.

### V.

### CONCLUSION

When a defendant establishes ineffective assistance of counsel based on counsel's failure to protect his equal protection rights as defined by *Batson,* prejudice should be *presumed.* As the Supreme Court recognized in *McCollum,* "there is a distinction between exercising a peremptory challenge to discriminate against jurors on account of race and exercising a peremptory challenge to remove an individual juror who harbors racial prejudice." *McCollum,* —— U.S. at ——, 112 S.Ct. at 2359. *See also, Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723. Today, the majority blurs this important distinction and weakens our previous commitment to the ideal of fairly selected juries.

For these reasons, I respectfully dissent.

OVERSTREET, J., joins this opinion.