**Affirmed and Memorandum Opinion filed November 1, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00820-CR

**DERRICK DESHAWN BRYANT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 10CR0762**

## MEMORANDUM OPINION

Appellant Derrick Deshawn Bryant was convicted of aggravated robbery. In two issues, he contends that the prosecutor engaged in improper argument, and that he was denied the effective assistance of trial counsel. We overrule both issues and affirm the judgment of the trial court.

### BACKGROUND

In November 2009, the complainant, Kenneth Townsend, was attacked at an empty car wash in La Marque, Texas, by two men demanding his wallet. Townsend, a retired army pilot, attempted to fight off both of his attackers. The struggle lasted until

the shorter of the two robbers struck Townsend over the head with a handgun, knocking him to his knees. Townsend was then forced to the pavement, where both attackers went through his pockets, pulled out a billfold, and ran away. Townsend tried to pursue them in his vehicle, but he lost sight of the men after they ran through a fence. Townsend eventually abandoned the chase and dialed 911.

When police arrived at the scene, Townsend described his attackers as young African-American males. The shorter male was light-skinned, standing at five feet eight inches tall, and weighing between 155 and 160 pounds. The taller male had a darker complexion and traces of facial hair. Without specifying the attacker, Townsend also said that one man had a shirt with horizontal red and orange stripes.

Less than an hour after the robbery, Townsend's stolen credit card was used at a nearby convenience store. Authorities rushed to the store and obtained surveillance footage of two African-American males using the card. Neither male matched the descriptions provided by Townsend. When shown still photographs of the suspects, Townsend said that he did not recognize them as his attackers.

Two weeks after the robbery, while patrolling the area near the car wash, an investigating detective spotted an individual who matched the description of the shorter robber. The individual made eye contact with the detective and displayed obvious signs of tension in his movements. The detective followed the man as he walked to a nearby apartment complex, losing sight of him only after the man entered one of the buildings. Authorities spoke with the manager of the apartment complex, who identified appellant as a tenant of that particular building. The detective confirmed at trial that appellant was the man he had been tracking into the complex.

With appellant named as a possible suspect, the investigating detective used a database containing appellant's picture to compile two photo spreads, each depicting six similarly featured males. Appellant's picture appeared in only a single photo spread. When both photo spreads were given to him, Townsend instantly identified appellant's picture as the shorter man who had robbed him.

2

The detective tried to question appellant after Townsend's positive identification, but all attempts to contact him proved unsuccessful. At one point, the detective received an anonymous voice message naming another person, Terry McClain, as the shorter man involved in the robbery. The anonymous informant also stated that McClain lived in the same building as appellant, but in a different apartment. The detective investigated the lead, but could not find any photo or information regarding McClain. Believing he had already identified the more aggressive robber involved in the incident, the detective decided to refer the case to the district attorney's office and proceed with other investigative priorities.

At trial, appellant tried to direct responsibility for the robbery onto one of his neighbors. Appellant called to the stand the property manager for his apartment complex, who testified that a family of known troublemakers lived in the apartment next door to him. The family's rental application showed members of two households, the McClains and the Campbells, but Terry McClain was not listed among them individually.

Appellant's private investigator also testified as a witness. Based on his independent investigation, the investigator said that he could identify three males, including Terry McClain, who may have had some connection to appellant or the robbery. However, the investigator said that McClain could not be implicated in the crime because he was incarcerated on the date of the robbery.

Appellant also called Stephen Smith, an expert witness and psychology professor specializing in the subject of memory and eyewitness identifications. Smith testified that several factors may have compromised Townsend's eyewitness identification of appellant. Relying on past studies, Smith opined that Townsend may have mistakenly identified appellant because the two men are of different races, and cross-racial identifications tend to be less reliable. Smith also noted that the time delay may have made Townsend's identification less accurate; in this case, photo spreads were not presented to Townsend until sixteen days after the robbery. Finally, Smith testified that Townsend's memory may have been compromised by his advanced age of seventy-one

3

and by the level of anxiety he experienced during the attack. Despite all of these factors, Smith agreed that the photo spreads compiled by police were not biased or tainted. If anything, he said, the photo spreads suggested another individual whom Townsend did not select.

Appellant testified in his own defense, denying any sort of involvement in the robbery. He also claimed that one person captured in the surveillance photos at the convenience store resembled a separate neighbor in the next door apartment, a member of the Campbell family. The jury rejected appellant's testimony and sentenced him to fifteen years' imprisonment. Appellant did not file a motion for new trial. This appeal followed.

## CLOSING ARGUMENT

In his first issue, appellant contends that the prosecutor engaged in improper jury argument. His complaint focuses on a passage from closing arguments in which the prosecutor attempted to dissuade the jury from accepting the testimony of appellant's expert witness. The particular discussion focused on the subject of photo spreads. At trial, appellant's expert had testified that, according to some studies, in-person line ups could be more suggestive, and therefore less reliable, than photo spreads presented on paper. The expert was unconvinced that all studies supported this finding, and he testified that guidelines had been prepared by the U.S. Department of Justice to minimize the suggestiveness of the entire investigative process. In her closing argument, the prosecutor recounted this testimony in a different way, stating that the Department of Justice had recommended the use of photo spreads over in-person line ups. The prosecutor's argument, and the objection it triggered, proceeded as follows:

> STATE: [The expert] testified about the photo line ups and even noted that the Department of Justice prefers you doing photo line ups instead of a live line up instead of bringing a person in front of the -- the Department of Justice says --
>
> DEFENSE: Objection, Your Honor, there's no evidence of that in the record. I object to the prosecutor arguing outside the record.

COURT: All right. The lawyers are going to disagree about what you saw and heard but you remember what you saw and heard, so go by that.

The prosecutor's argument continued with other aspects of the expert's testimony, none of which revisited the issue of preferences from the Department of Justice.

Jury argument is permissible if it constitutes a summation of the evidence, a reasonable deduction from the evidence, an answer to argument of opposing counsel, or a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Appellant contends that he was harmed because the prosecutor's mischaracterization of evidence falls into none of these categories.

Appellant failed to preserve error. To complain of improper jury argument, a defendant must generally object to the argument and pursue his objection to an adverse ruling. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Nadal v. State*, 348 S.W.3d 304, 319 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). If the trial court sustains the objection, the defendant must also request an instruction to disregard and move for a mistrial. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *Campos v. State*, 946 S.W.2d 414, 417 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Here, appellant objected to the prosecutor's argument, but the trial court did not make a ruling on the objection, issuing a cautionary instruction instead. *Cf. Washington v. State*, 127 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that trial court's instruction to prosecutor to "stay within the record" following objection to improper argument was not an adverse ruling). Because appellant did not pursue his objection to an adverse ruling, his complaint is forfeited.

Even if error had been preserved, we would still conclude that the error was not reversible. When argument is improper, it will not result in reversal unless, in light of the record as a whole, it is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Todd v. State*, 598 S.W.2d 286, 297 (Tex. Crim. App. [Panel Op.] 1980).

Appellant does not contend that the prosecutor's argument was extreme or in violation of a statute, but he does argue that he was harmed by the injection of new facts. For his harm analysis, appellant cites heavily to *Denton v. State,* 946 S.W.2d 607 (Tex. App.—Fort Worth 1997, pet. ref'd), a case involving another instance of improper jury argument. *Denton* is distinguishable though, because it relied on former Rule 81(b)(2), which instructed that error should be reviewed under the same standard for constitutional error, even though an error may not be constitutional in magnitude. *See id.* at 610; *see also VanNortrick v. State*, 227 S.W.3d 706, 709–10 (Tex. Crim. App. 2007) (discussing Rule 81(b)(2) before the adoption of Rule 44.2 of the Texas Rules of Appellate Procedure). The *Denton* Court also conducted its harm analysis using factors that the court of criminal appeals has recently disavowed. *See Denton*, 946 S.W.2d at 610–12 (applying factors announced in *Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1989), *overruled in part by Snowden v. State*, 353 S.W.3d 815 (Tex. Crim. App. 2011)). For these reasons, we do not believe *Denton* is applicable here.

Appellant also cites to Rule 44.2(a), the current standard for reviewing harm in cases of constitutional error. But appellant does not explain what constitutional error, if any, was committed when the trial court failed to sustain his objection. Under the facts of this case, we perceive that any error would have been nonconstitutional in nature. *Cf. Brown*, 270 S.W.3d at 572 (discerning nonconstitutional error where trial court overruled objection to prosecutor arguing facts outside the record). Nonconstitutional error that does not affect a defendant's substantial rights must be disregarded. Tex. R. App. P. 44.2(b). To determine whether appellant's substantial rights were affected, we balance the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct. *Threadgill v. State*, 146 S.W.3d 654, 666–67 (Tex. Crim. App. 2004); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Watts v. State*, 371 S.W.3d 448, 459 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

When considering the severity of the prosecutor's misconduct, we examine the prejudicial effect of her remarks, assessing whether there was a willful and calculated effort to deprive appellant of a fair and impartial trial. *Mosley*, 983 S.W.2d at 259; *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997). Viewing the record as a whole, we cannot ascertain any such prejudice. The prosecutor's misstatement pertained to a minor issue in the case. The contested fact at trial was the complainant's eyewitness identification, not the merits of using photo spreads over in-person line ups, and certainly not the preferences of the Department of Justice as they relate to such identification techniques. Moreover, the prosecutor's misstatement was an isolated comment in her closing argument, one that was never once revisited. We cannot say that the argument was so prejudicial as to create an undue risk that the jury might have reached its verdict on an improper basis.

Under the next factor, we consider the efficacy of any cautionary instruction from the trial judge. *Mosley*, 983 S.W.2d at 259. In this case, the trial judge stated that the advocates had disagreed on the state of the evidence. In the face of this disagreement, the judge advised the jury to base its decision on what was seen and heard at trial. Although no instruction to disregard was given, the record does demonstrate that some measure was adopted to cure any misconduct on the part of the prosecutor.

Finally, under the third factor, we consider the strength of the evidence supporting the conviction. *Id.* Appellant's conviction depended largely on the reliability of Townsend's identification. Appellant's expert witness doubted his identification for several reasons. As mentioned above, the expert testified that cross-racial identifications can be unreliable, there was a prolonged delay before Townsend was first shown the photo spreads, and Townsend's memory may have been compromised by his age and anxiety.

The State disputed each basis for the expert's opinions. The evidence showed that the robbery was committed on a bright and sunny day, when visibility was ideal. Officers testified that Townsend was able to provide many details relating to the crime shortly

7

after its occurrence. Based on those details, police were able to compile a photo spread containing a picture of appellant, who fully matched the description provided for one of the robbers. Townsend instantly identified appellant as his attacker when he was shown the photo spreads. Townsend also testified that he was raised among racial minorities, which might support the reliability of his cross-racial identification. Townsend also testified that his military training sharpened his ability to notice details, which might diminish any suggestion that his anxiety levels compromised his memory. All of this testimony goes to the weight of the evidence, which we, as an appellate court, are ill-equipped to review. We would note, however, that appellant's own expert also added that the photo spreads used in this case were not biased against appellant.

After considering all three factors and the record as a whole, we conclude that any error relating to the prosecutor's improper argument was not so harmful as to affect appellant's substantial rights. Appellant's first issue is overruled.

## ASSISTANCE OF COUNSEL

In his second issue, appellant argues that he was denied the effective assistance of counsel because counsel made an untimely *Batson* challenge and because counsel elicited damning testimony from one of his own witnesses. *See Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that Equal Protection Clause forbids prosecutor from challenging potential jurors solely on account of their race). We examine such claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, appellant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. This deficiency will deprive appellant of a fair trial only when counsel's performance prejudices appellant's defense. *Id.* at 691–92. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or

sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

As a reviewing court, we look to the totality of the representation and to the circumstances of the case, not to isolated instances in the record reflecting errors of omission or commission. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Moreover, we consider the adequacy of assistance as viewed at the time of trial, rather than through hindsight. *Id.* at 482. Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Accordingly, we do not speculate as to the reasons supporting counsel's behavior. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

## A.     *Batson* Challenge

Appellant argues that counsel's performance was constitutionally deficient because counsel failed to timely lodge his *Batson* challenge. For a *Batson* challenge to be timely, it must be raised after the parties deliver their lists of strikes and before the court impanels the jury. Tex. Code Crim. Proc. art. 35.261; *Cooper v. State*, 791 S.W.2d 80, 81 (Tex. Crim. App. 1990). A jury is considered impaneled when the members of the jury have been both selected and sworn. *Hill v. State*, 827 S.W.2d 860, 864 (Tex. Crim. App. 1992). In this case, trial counsel first raised the notion of a *Batson* challenge after the jury had been sworn. Assuming counsel's belatedness amounts to constitutionally deficient performance, appellant still must demonstrate by a preponderance of the evidence that a

different result would have occurred but for his counsel's ineffective assistance. This he has not done.

In his brief, appellant urges a position advanced in the dissenting opinion of *Batiste v. State*, which argued that "prejudice is certain" with *Batson* violations. 888 S.W.2d 9, 20 (Tex. Crim. App. 1994) (Baird, J., dissenting). But in the majority opinion, the court of criminal appeals determined that prejudice could not be presumed under a *Strickland* analysis where a defendant has claimed that counsel was ineffective for untimely making a *Batson* challenge. *See id.* at 17 (majority opinion) (concluding that court of appeals did not err by subjecting appellant's claim to second prong of *Strickland*). Appellant has not provided any authority to suggest that *Batiste* is no longer controlling. As an intermediate appellate court, we must adhere to it out of principles of vertical stare decisis.

Appellant has not met his burden under *Batiste* of showing how he was prejudiced by counsel's errors, if any. Appellant has not provided this Court with a record showing the racial composition of the venire panel. Our record includes a strike list, but appellant has not identified which venire members were improperly struck on the basis of race. There is also no record as to whether the prosecutor lacked a reason other than race for exercising her peremptory strikes. Finally, with a record so underdeveloped, there is no indication that the trial court would have granted appellant's *Batson* challenge, or that a properly constructed jury would have reached a different result had the challenge been timely. *Cf. Williams v. State*, 313 S.W.3d 393, 402 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (concluding that appellant had not shown prejudice in case where counsel failed to object to the inclusion on the jury of five venire members whom counsel had peremptorily challenged).

### B.     Damning Testimony

Appellant also argues that counsel was ineffective because he elicited damning testimony from the property manager of appellant's apartment complex. Counsel called the property manager for her testimony that appellant's neighbors may have been

involved in the robbery. When she was on the stand, counsel also elicited testimony that appellant was a troublemaker, that he used drugs, and that he slightly resembled one of the figures in the convenience store pictures. Appellant contends that allowing this witness to testify about such subjects was objectively unreasonable.

Appellant has failed to rebut the presumption that counsel's actions were the result of sound trial strategy. Before being condemned as unprofessional or incompetent, counsel is normally afforded an opportunity to explain his actions, such as with a hearing on a motion for new trial or with the filing of an affidavit. *See Bone*, 77 S.W.3d at 836; *Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.). But appellant did not file a motion for new trial, and the record is likewise devoid of any explanation regarding counsel's actions. The record does not affirmatively show that counsel knew or should have known that the property manager would have testified about appellant in such a negative light.

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Because the record here is underdeveloped, we must presume that counsel's choice of questions was motivated by sound trial strategy. *See Strickland*, 466 U.S. at 689 (observing that a fair assessment of attorney performance must be made without the distorting effects of hindsight).

Even if we were to assume that counsel was ineffective because of the testimony he elicited, appellant has not demonstrated by a preponderance of the evidence that he was prejudiced by counsel's actions. Appellant testified that he did not use drugs. The prosecutor did not cross-examine the property manager, nor did she emphasize the manager's testimony in closing argument. Moreover, the prosecutor tended to suggest in her closing argument that appellant was not one of the individuals captured in the store surveillance camera.

Appellant has not shown a reasonable probability that the outcome of trial would have been different but for counsel's errors, if any. His second issue is overruled.

**CONCLUSION**

The judgment of the trial court is affirmed.


                              /s/      Adele Hedges
                                       Chief Justice



Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).