The STATE of Texas ex rel. Tim CURRY, Criminal District Attorney for Tarrant County, Relator,

v.

Hon. Wallace BOWMAN, Judge, County Criminal Court Number Four of Tarrant County, Respondent.

No. 71606.

Court of Criminal Appeals of Texas, En Banc.

Dec. 8, 1993.

Rehearing Denied April 6, 1994.

Certiorari Denied Oct. 3, 1994.

See 115 S.Ct. 184.

Mark Daniel, David L. Richards, Fort Worth, for respondent.

Tim Curry, Dist. Atty., and Charles M. Mallin, and Edward L. Wilkinson, Asst. Dist. Attys., Fort Worth, for relator.

Robert Huttash, State's Atty., Austin, for State.

## OPINION ON ORIGINAL APPLICATION FOR WRIT OF MANDAMUS AND ORIGINAL APPLICATION FOR WRIT OF PROHIBITION

OVERSTREET, Judge.

This is a writ of mandamus and prohibition action filed by Tim Curry, Criminal District Attorney of Tarrant County, seeking this Court to compel the Honorable Wallace Bowman, Judge of County Criminal Court Number Four of Tarrant County, to comply with the mandates of Article 35.261 of the Texas Code of Criminal Procedure. The State (hereinafter the relator) moved for a mistrial after Judge Bowman (hereinafter the respondent) granted the defendant's *Batson*[1] motion and ordered two of the struck veniremembers reinstated on the panel to serve as jurors. Relator asks that the array be dismissed and a new array called pursuant to Article 35.261.[2]

We are requested to resolve whether the prosecution is entitled to, as a remedy, the dismissal of the array pursuant to Article 35.261 when a defense *Batson* motion has been sustained and the defendant acquiesces to a remedy other than that prescribed in

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. Article 35.261 provides in part:
   (a) After the parties have delivered their lists to the clerk ... and before the court has impaneled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race....
   (b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

Article 35.261(b). We are also requested to resolve whether in this case, where the trial court denied dismissal of the array, there was a violation of the prosecution's right to exercise its peremptory challenges pursuant to Article 35.15.

## PERTINENT FACTS

On January 29, 1993, the parties were engaged in the jury selection of cause number 0426042, wherein the defendant was accused of driving while intoxicated. After completing voir dire and after both sides exercised their peremptory strikes, the defendant made a *Batson* motion alleging that relator had exercised its peremptory strikes against three veniremembers based solely upon the veniremembers' race and requested that respondent quash the panel or disallow the strikes.

Respondent conducted a *Batson* hearing and determined that relator had purposely discriminated against two of the three veniremembers. Respondent disallowed two of the strikes and based on his understanding of *Batson*, ordered the two veniremembers reinstated on the panel and seated them on the jury. Relator objected to this procedure and asserted that Article 35.261 mandates that the array should be dismissed and a new one be called. Respondent allowed the relator to use both of the voided strikes on other members of the array; however, relator declined, stating that none of the other veniremembers were unacceptable to the State. Over relator's objections, respondent impaneled the jury and ordered the parties to prepare for trial. The proceedings were then adjourned for the weekend.

Relator filed a previous mandamus action against respondent predicated upon the conduct which is the subject of the instant petition in the Second Court of Appeals. The Second Court of Appeals stayed the proceeding, ordered pleadings filed and set a hearing. However, a week prior to the hearing, it withdrew its order as improvidently granted and dismissed the relator's petition and

vacated the stay. This application was then filed.

Relator contends that he is entitled to a writ of mandamus compelling respondent to vacate his order reinstating the jurors on the jury because respondent violated his legal duty under Article 35.261. Relator argues that once a *Batson* motion is sustained it is mandatory pursuant to Article 35.261 that respondent dismiss the array and begin with a new panel. Relator further contends that respondent's order was violative of another mandatory statute, Article 35.15(c),[3] because reinstating the stricken veniremembers on the jury denied the State its minimum number of peremptory strikes. Finally, relator contends that the State may not be limited to any less than the three peremptory strikes allowed by law under any circumstances.

## MANDAMUS

█ In order to be entitled to the extraordinary relief of mandamus, the relator must establish two essential requirements: (1) that the act sought to be compelled is ministerial as opposed to discretionary and (2) no other adequate remedy at law is available. *Stearnes v. Clinton*, 780 S.W.2d 216, 219 (Tex.Cr.App.1989).

█ The primary concern in deciphering whether an act is ministerial " 'is whether the respondent had the authority' to do what is the subject of the complaint." *Id.* Citing *State ex rel. Thomas v. Banner*, 724 S.W.2d 81, 83 (Tex.Cr.App.1987). In this instance, that act is to order the struck venireperson reinstated on the panel and seated on the jury.

### I. BATSON AND IT'S PROGENY

In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the state's use of peremptory challenges to purposefully or deliberately exclude black persons from jury participation solely on account of their race. *Id.* at 86, 106 S.Ct. at 1717. Thereafter, the Supreme Court extended the

---

**3.** Article 35.15(c) provides in part:
  (c) The State and the defendant shall each be entitled to five peremptory challenges in a mis-

demeanor tried in the district court and to three in the county court, or county court at law.

focus of *Batson, Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (holding that the Fourteenth Amendment protects every person against purely racially motivated exercise of peremptory challenges), civil litigants, *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (holding that courts must entertain a challenge to a private litigant's racially discriminatory use of peremptory challenges in a civil trial), and to criminal defendants, *Georgia v. McCollum,* — U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1993) (holding that the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges).

▆▆▆ *Batson* and its progeny recognized that *Batson* "was designed 'to serve multiple ends,'" only one of which was to protect individual defendants from discrimination in the selection of jurors. *Powers,* 499 U.S. at 406, 111 S.Ct. at 1368. (citations omitted). As in *Powers* and *Edmonson,* the extension of Batson's proscriptions is to remedy the harm done to the "dignity of persons" and the "integrity of the courts." *McCollum, supra,* — U.S. at ——, 112 S.Ct. at 2353. The harm caused by a *Batson* violation is inflicted not only upon the parties but the excluded juror and the entire community as well. "[If] a court allows a juror to be excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justice—our citizens' confidence in it." *McCollum,* — U.S. at ——, 112 S.Ct. at 2354. The group bias may stem from gender, religion, ethnic or any other cognizable group. "In our heterogeneous society, policy as well as constitutional considerations militate against the divisive assumptions—as a per se rule—that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the choice of religion." *Id.,* — U.S. at ——, 112 S.Ct. at 2359 (citations omitted). As a practical matter, the excluded juror has considerable barriers and little incentives to set in motion the arduous process needed to vindicate his own rights. *Powers,* 499 U.S. at 414, 111 S.Ct. at 1372–73. A citizen, however, does not have the right to sit on a particular petit jury, but he or she does have the right not to be excluded from one in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id.,* 499 U.S. at 1370; *Jacobs v. State,* 824 S.W.2d 563 (Tex.Cr.App.1992) (Overstreet, J. dissenting).

## II. *THE REMEDY*

▆▆▆ In recognizing the discriminatory use of peremptory strikes, the Supreme Court in *Batson, supra,* did not prescribe a particular remedy but left it to state and federal trial courts to fashion their own remedy. The Court explained that, "[w]e express no view on whether it is more appropriate in a particular case, upon a finding of discrimination ... for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case ... or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." (Citations omitted.) *Batson,* 476 U.S. at 100 n. 24, 106 S.Ct. at 1725, n. 24.

To codify and implement *Batson* in Texas, the Legislature enacted Article 35.261, V.A.C.C.P. *Hill v. State,* 827 S.W.2d 860 (Tex.Cr.App.1992) (citations omitted). At that time our legislature, having only *Batson* before it, addressed only the defendant's rights and elected that the sole remedy would be to discharge the jury and call a new array. We concluded the same. *Id.* However, in view of the evolution of *Batson* through recent opinions, it is evident that the remedy provided in section (b) of Article 35.261 and the cases supporting that section may be unconstitutionally restrictive.

In *Hill,* we found that the legislature chose this remedy to eliminate any possible bias against the State which might exist if the remedy were to seat a veniremember whom the State had just struck. *Id.* at 864. Yet, the same possibility of bias exist against defendants and was recognized by the Supreme Court in *McCollum.* There the Court held that the State is now entitled to raise a *Batson* motion against racial discrimination by the defendant. Were the State's access to a *Batson* claim our only concern, dismissing

the array and calling a new one might be adequate. Our analysis, however, cannot stop there. The potential juror excluded by a racial generality suffers a profound personal humiliation heightened by its public character. *Powers, supra,* 499 U.S. at 413, 111 S.Ct. at 1372. *Batson* and its progeny demonstrate that denying a person participation on a jury—the quintessential governing body, on account of his race unconstitutionally discriminates against the excluded juror. "Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same—in all cases, the juror is subjected to open and public racial discrimination." *McCollum,* — U.S. at —, 112 S.Ct. at 2353. Therefore, the evolving interpretations of *Batson* instruct that a *Batson* violation is not merely harmful to the parties involved but to the individual veniremember as well. If the only remedy is dismissal of the array, the affected veniremember is still not allowed to participate in the process. Indeed, the sole remedy of Article 35.261 may defeat the purpose of the protection.

*Batson* and its progeny "convincingly demonstrate the principle that race shall play *no* part in the jury selection process. The exclusion of minority citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." *Hill,* 827 S.W.2d at 873. (Baird, J., concurring) (citing *Batson,* 476 U.S. at 84–85, 106 S.Ct. at 1716). (Emphasis in original).

The defendant in the instant action raised his objection based upon the equal protection rights of the excluded veniremembers. He did not expressly assert any statutory rights. The defendant stated:

> The [S]tate had three peremptory challenges and used all of their peremptory challenges on black males on the jury panel. And, I move that you quash the panel or otherwise disallow their strikes.

The defendant was not relying solely on Article 35.261 because the alternative relief requested is not available under the statute. The respondent did not refer to Article 35.261 in ruling upon the defendant's objection, but specifically asserted that his decision to sustain the defendant's objection and to reinstate the wrongfully excluded veniremembers was based solely upon his understanding of *Batson* and cases interpreting *Batson*.[4] Thus, an objection to an impermissible peremptory challenge of a veniremember based on *Batson* and its progeny is no longer coextensive with an objection predicated upon Article 35.261.

This Court has acknowledged that the interpretation of Article 35.261 should be "flexible" in response to evolving constitutional interpretations of *Batson. State v. Oliver,* 808 S.W.2d 492, 496 (Tex.Cr.App.1991). Compliance with the Constitution of the United States was intended when Article 35.261 was enacted, Tex.Gov't.Code Ann. § 311.021(1), and a just and reasonable result feasible of execution was intended. Tex. Gov't.Code Ann. § 311.021(3) and (4). Dismissing an array is not a just and reasonable vindication of a prospective juror's right who, but for the use of an peremptory challenge in violation of the Equal Protection Clause of the Fourteenth Amendment, would have served on the jury.

We now hold that where a *Batson* claim is sustained the court may fashion a remedy in its discretion consistent with *Batson* and its progeny. Therefore, respondent's decision to reinstate the excluded veniremembers to the jury is consistent with our decision today and so will not be disturbed.

### III. *ARTICLE 35.15(c)*

The import of Article 35.15(c) is that both parties shall not be limited to any less than their allocated peremptory challenges. Because of our disposition there is no need to reach the relator's concerns in 35.15(c).

### IV. *CONCLUSION*

Given the evolution of *Batson* with the rulings of both the *McCollum* and *Powers* opinions, we find that respondent had discretion to fashion the remedy utilized in this

---

4. The record reflects that the first time Article 35.261 was mentioned was by the state, and this was only after the respondent had ruled and reinstated the improperly excluded veniremembers.

case. Therefore, the State is not entitled to the mandamus relief that it requests. Accordingly, the relief requested is denied.

WHITE, J., dissents.

MEYERS, J., not participating.

McCORMICK, Presiding Judge dissenting.

In *Hill v. State,* we said the Legislature enacted Article 35.261, V.A.C.C.P., "to create uniform procedures and *remedies* to address claimed constitutional violations during jury selection." *Id.,* 827 S.W.2d 860, 864 (Tex.Cr. App.1992). (Emphasis Supplied). We also said the Legislature elected to have the sole *remedy* [for a *Batson*[1] violation] to be the call of a new array as set out in Article 35.261(b), V.A.C.C.P., and this is the remedy the State requests we mandamus the trial court to provide in this case. *Hill,* 827 S.W.2d at 863–64. (Emphasis Supplied). The majority opinion, in effect, overrules *Hill* without expressly finding any constitutional infirmity in Article 35.261(b) but also stating the remedy in Article 35.261(b) "may be unconstitutionally restrictive."

To the extent Judge Overstreet's majority opinion suggests *Batson* and Article 35.261 confer similar but separate rights, I disagree. *Batson* confers a federal constitutional right to a defendant vicariously to assert the rights of veniremembers peremptorily excluded by the State on the basis of race. The *Batson* court left it up to the individual States to fashion a remedy for a *Batson* violation. The Texas Legislature in Article 35.261(b) fashioned the sole remedy to a defendant for a *Batson* violation. See *Hill,* 827 S.W.2d at 863–64. The Legislature conferred no separate right under State law; it merely codified a *remedy* for the violation of a federal constitutional right conferred by *Batson.*

1. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

1. *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Georgia v. McCollum,* — U.S. —, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1993).

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* held that it

The majority also suggest the remedy in Article 35.261(b) may be unconstitutional because it does not redress the rights of those veniremembers the State peremptorily strikes on the basis of race. However, *Batson* only provides a defendant with standing to vicariously assert the rights of wrongfully excluded veniremembers. *Batson* left it up to the States to fashion remedies for *Batson* violations, and even suggested one appropriate remedy is the one found in Article 35.261(b). This remedy primarily is intended to benefit a defendant and to ensure a fair trial. See *Hill,* 827 S.W.2d at 864. I do not read *Batson* as requiring any particular remedy be provided to a wrongfully excluded veniremember, and I do not see any constitutional infirmity with the remedy chosen by the legislature in Article. 35.261(b).

I would grant the mandamus relief.

MALONEY, Judge, dissenting.

I agree that article 35.261 V.A.C.C.P., given the Supreme Court's decisions[1] expanding the original rule of *Batson,*[2] is partially obsolete as to facts that might arise in the selection of a jury, particularly where the defendant violates the *Batson* rule. However, under the facts of this case, the statute is workable and should be followed.

The State cites to us the case of *State v. McCollum,* 334 N.C. 208, 433 S.E.2d 144 (1993). In that case a capital murder defendant argued on appeal that the trial court reversibly erred in refusing to seat a venireman who had been impermissibly struck in violation of *Batson.* Instead, the trial court dismissed the jury and called an entirely new venire panel. The North Carolina Supreme Court affirmed the trial court's actions, calling it "the better practice" and stating that neither *Batson* nor *Powers* requires that a

is a violation of the equal protection clause of the Fourteenth Amendment for the State to exercise a peremptory challenge against veniremembers solely on account of their race. *Id.* at 89, 106 S.Ct. at 1719. While a defendant has no right to a jury composed of members in whole or in part of persons of his own race, a "defendant does have the right to a jury whose members are selected pursuant to nondiscriminatory criteria." *Id.* at 85–86, 106 S.Ct. at 86.

venireman be placed back on the panel having been struck. The North Carolina Court reasoned "that the primary focus of a criminal case ... must continue to be upon the goal of achieving a trial which is fair to both the defendant and the State." *McCollum,* 433 S.E.2d at 159.

In *Hill v. State,* 827 S.W.2d 860 (Tex.Crim. App.1992), this Court articulated the purpose of article 35.261, and the Supreme Court of North Carolina's reasoning is consistent with that purpose:

> To ask jurors who have been improperly excluded from a jury because of their race to then return to the jury to remain unaffected by that recent discrimination, and to render an impartial verdict without prejudice towards either the State or the defendant, would be to ask them to discharge a duty which would require near superhuman effort and which would be extremely difficult for a person possessed of any sensitivity whatsoever to carry out successfully.

*McCollum,* 433 S.E.2d at 159; *see also Hill,* 827 S.W.2d at 864 (remedy of calling new array is to eliminate possibility of bias if struck venireman were to be reseated).

As pointed out in *Hill,* the reseating of a venireman discriminatorily struck was rejected by the legislature when it enacted 35.261; however, as stated above the statute is now partially obsolete (albeit workable under the facts of this case). Even if we were to hold that the statute is completely obsolete in light of recent Supreme Court decisions, it seems to me that an attempt should be made to fashion a remedy that is consistent with such Supreme Court cases and with the legislative intent as expressed in the existing statute.

My brethren believe that a vacuum now exists as to remedy and have attempted to fashion a solution. Hoping that the trial judges of this State in applying that solution continue to remember the primary focus of a criminal case, I regretfully dissent.

McCORMICK, P.J., joins.