**Gercie BROOKS, Individually and as Personal Representative of the Heirs and Estate of John B. Brooks, Jr., Deceased, Appellants,**

v.

**ARMCO, INC., et al., Appellees.**

No. 06–04–00111–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 2, 2006.

Decided May 17, 2006.

Charles S. Siegel, Loren Jacobson, Ron C. Eddins, Waters & Kraus, LLP, Dallas, for appellants.

James M. Hall, Jr., Murphy Klasing, Kenneth C. Moursund, Jr., McGinnis, Lochridge & Kilgore, LLP, Houston, for appellees.

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

### OPINION

Opinion by Justice CORNELIUS.

Gercie Brooks, individually and as personal representative of the heirs and estate of John B. Brooks, Jr., deceased (Plaintiffs), appeal from a take-nothing judgment rendered against them in their suit against Armco, Inc.[1] (Defendant), seeking damages for the death of John B. Brooks, Jr. Plaintiffs alleged that Brooks, who worked for Armco for twenty-two years, died from mesothelioma caused by his exposure to products containing asbestos while at Armco's plant in Pasadena, Texas. Plaintiffs produced evidence that Brooks died from mesothelioma, but Armco produced medical evidence that Brooks died from adenocarcinoma, unrelated to asbestos exposure. The case was tried to a jury, which found against Plaintiffs on all issues.

On appeal, Plaintiffs contend generally that they are entitled to a new trial because the trial court erred in: failing to strike three prospective jurors for cause; improperly restricting the hearing on Plaintiffs' *Batson–Edmonson* challenges by limiting their cross-examination of the defense counsel and refusing to allow their attorney to examine defense counsel's voir dire notes; and allowing Defendant an extra peremptory challenge to replace the strike it used to remove a prospective juror on the basis of race. We overrule all of these contentions and affirm the judgment.

### CHALLENGES FOR CAUSE

In the voir dire examination of the jury panel, Plaintiffs' counsel tried to explain the burden of proof that would be used in

1. Armco, Inc., has been succeeded by AK Steel, Inc.

this case (preponderance of the evidence and clear and convincing evidence) by comparing it with the burden of proof in criminal cases (beyond a reasonable doubt). After a lengthy attempt to explain the "beyond a reasonable doubt" burden, Plaintiffs' counsel asked the panel members if any of them thought it should be the burden of the plaintiff in a civil damage suit. Panel members four, five, and eleven indicated they thought the plaintiff in a civil suit should be required to prove his case beyond a reasonable doubt like in a criminal case. Defendant objected to Plaintiffs' counsel's confusing comparison of the different burdens of proof. In response, the trial court told the jury panel he would instruct it regarding the proper burden of proof in this case. The court did later instruct the jury on the proper burden of proof. After the trial court told the panel he would instruct it on the proper burden of proof in this case, both counsel for Plaintiffs and for Defendant further questioned the jury panel on the burden of proof and reiterated to it that the trial court would instruct it on the proper burden. In this further questioning, none of the panel members, including those who had earlier expressed a preference for the higher burden of proof, answered or indicated they would not follow the court's instruction or would require a higher burden on Plaintiffs than the court instructed them.

■■■ Plaintiffs contend panel members four, five, and eleven expressed a bias as to the burden of proof and were therefore subject to challenge for cause. But expressions indicating a bias that are equivocal at most are not absolute grounds for disqualification. And an initial leaning toward a particular view is not disqualifying if it represents skepticism or uncertainty rather than an unshakeable conviction. *Cortez, ex rel. Puentes v. HCCI–San Anto-*

*nio,* 159 S.W.3d 87, 94 (Tex.2005). For a bias to disqualify a juror, it must appear that the state of mind of the juror leads to the natural inference that he will not or cannot act with impartiality. *Goode v. Shoukfeh,* 943 S.W.2d 441, 453 (Tex.1997). Statements or indications of bias may be the result of inappropriate leading questions, confusion, misunderstanding, or ignorance, and veniremembers are not necessarily subject to challenge for cause when they indicate a bias so long as the rest of the record shows that is not the case. *Cortez, ex rel. Puentes,* 159 S.W.3d at 93. In reviewing the trial court's decision on challenges for cause, we must consider the entire examination, not just answers that favor one side over the other. Trial judges are better able to evaluate a juror's sincerity and capacity for fairness, and they have the discretion whether to strike a panel member for cause when bias is not established as a matter of law. *Id.; see also Compton v. Henrie,* 364 S.W.2d 179, 184 (Tex.1963).

From a review of the entire record, we find that panel members four, five, and eleven were not biased as a matter of law, and the trial court did not abuse its discretion in refusing to strike them for cause. A reasonable construction of the record is that the prospective jurors in question simply stated what they thought the law ought to be on the burden of proof requirement, but when the trial court explained that it would instruct them as to the burden of proof required in this case, they indicated to counsel for both sides that they had no problem applying the burden of proof the court said they must use and that they would not try to apply any higher burden of proof. None indicated they could not or would not follow the law on the burden of proof as given to them by the trial court.

## THE *BATSON–EDMONSON* HEARING

Plaintiffs made a *Batson–Edmonson* challenge because of four panel members who were peremptorily challenged by Defendant's attorney. Plaintiffs complain of the trial court's manner of conducting the *Batson–Edmonson* hearing, contending that the court improperly curtailed their cross-examination of defense counsel about the race-neutral reasons he gave for striking several African–American panel members and that the court refused to allow Plaintiffs' counsel to examine the notes made by defense counsel at voir dire.

■ Plaintiffs objected to defense counsel's striking panel members nine, ten, twenty-three, and twenty-eight, all of whom were African–American. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held it was a constitutional violation to use peremptory challenges in a criminal trial to exclude members of the jury panel on the basis of their race. The court extended the rule of *Batson* to civil cases in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). When a *Batson* or *Edmonson* challenge is made, the court must follow a three-step procedure. First, the opponent of the peremptory challenge must establish a prima facie case of racial discrimination. Second, the party who exercised the peremptory challenge must come forward with a race-neutral explanation for the challenge. Third, the trial court must determine if the party challenging the strike has proven racial discrimination. At this step, the court should provide the party asserting objections with a reasonable opportunity to conduct cross-examination. *Goode*, 943 S.W.2d at 445, 452.

Plaintiffs contend the trial court failed to give them a reasonable opportunity to cross-examine defense counsel about his race-neutral explanations. We disagree. The trial court freely allowed Plaintiffs to cross-examine Defendant's counsel. Plaintiffs' counsel questioned defense counsel about his reasons for striking some of the African–American panel members, and defense counsel explained and reiterated his reasons. Defense counsel was cross-examined about the four panelists he challenged, as well as others on the panel that he did not strike. At one point in Plaintiffs' cross-examination, the trial court commented that it was nearing 5:00 in the afternoon and he wanted to let the jury go before it got too late. Plaintiffs' counsel demurred and said he wanted more time to cross-examine defense counsel. The trial court said he could have five more minutes. The trial court then stated he was going to overrule the objections to the defense's strike of three of the panel members, but he was going to sustain the objection to one of the strikes. Plaintiffs' counsel again asked for more time to cross-examine. The court replied that counsel could continue the cross-examination the next morning if he wanted additional time, but counsel replied, "I'm not going to request that. I'm going to get through this as quick as I can."

■ The trial court has great discretion concerning the conduct of the trial. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex.2001). The court should provide a party objecting to allegedly racially motivated challenges a reasonable opportunity to cross-examine opposing counsel about his reasons for striking panel members, but courts in *Edmonson* hearings should also take care to prevent unnecessary disruption in the trial courts. *Goode*, 943 S.W.2d at 452.

■ We find the trial court did not abuse his discretion in limiting Plaintiffs' cross-examination at the *Edmonson* hear-

ing. Plaintiffs adequately explored defense counsel's reasons for striking the panel members, as well as his reasons for not striking others. Moreover, when the trial court offered to give Plaintiffs more time to continue the cross-examination the next day, their counsel refused. We find no error.

▮▮▮ Plaintiffs also complain the trial court refused to let their counsel examine the notes defense counsel took at voir dire. In an *Edmonson* hearing, the movant has a right to examine the voir dire notes of the opponent's counsel only if that counsel relies on his notes to refresh his memory while giving testimony. *Id.* at 449; *Pondexter v. State*, 942 S.W.2d 577, 582 (Tex.Crim.App.1996). Defense counsel here referred to his voir dire notes several times during his direct testimony and on cross-examination, but it appears he was only citing the notes to confirm the truth of his testimony, rather than using the notes to refresh his memory. Even if this constituted "use" of the notes to refresh his memory, we believe it is immaterial because the trial court examined the notes in camera and verbally related their contents to Plaintiffs' counsel, who then used the references in his cross-examination. If there was any error in the way the trial court handled this matter, we find it was clearly harmless.

▮▮ Finally, Plaintiffs assert it was reversible error for the trial court to allow the defense an extra peremptory challenge. The court ruled that defense counsel improperly struck one of the panelists for discriminatory reasons. The trial court restored that panel member to the jury and allowed the defense another peremptory challenge to replace the challenge that had been voided. Plaintiffs contend that allowing the extra peremptory challenge was error because it "rewarded" Defendant for using race-based discrimina-

tion. Plaintiffs rely on *Peetz v. State*, 180 S.W.3d 755 (Tex.App.-Houston [14th Dist.] 2005, no pet.), to support their position, but we find that case distinguishable. In *Peetz*, the defendant, who is white, used every peremptory challenge he had to remove every African–American person available to be on the jury. The court upheld one of the strikes as being race neutral, but voided two strikes, on panelists six and ten, and placed those two on the jury. The defendant then asked the trial court to grant him two additional peremptory challenges to replace the two he used that had been voided, but the trial court refused. On appeal, the Fourteenth District Court of Appeals recognized that, when a court finds a *Batson* violation, it may in its discretion fashion an appropriate remedy and that the trial court there did not abuse its discretion in refusing to give the defendant extra strikes, because the defendant deliberately used his strikes to discriminate against all African–American panelists and the trial court could properly penalize him for his deliberate discrimination against all African–Americans. The case here is strikingly different from *Peetz*. Here, the evidence before the trial court in the *Edmonson* hearing could reasonably have been construed by the trial court as showing that the improperly struck juror was not excluded because of deliberate prejudice against African–Americans, but, rather, as the result of an error of judgment as to what properly constituted race-neutral reasons. Such a conclusion is buttressed by the fact that there were two other blacks on the panel in this case whom defense counsel made no attempt to strike, but who were readily accepted by the defense and served as jurors.

▮▮ It is a policy of this State that both parties be allowed no fewer peremptory challenges than the minimum number

allowed them by our rules and statutes, unless the trial court in its discretion finds a compelling reason to allocate them otherwise. *State, ex rel. Curry v. Bowman,* 885 S.W.2d 421, 425 (Tex.Crim.App.1993); *see also Perez v. State,* 171 Tex.Crim. 505, 351 S.W.2d 234 (1961); *Truong v. State,* 782 S.W.2d 904 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd). Although *Perez* is a pre-*Batson* case, *Curry v. Bowman* and *Truong v. State* are post-*Batson* cases, and *Curry* specifically involved a *Batson* violation.

 Additionally, if it was error for the trial court to replace Defendant's peremptory challenge, it was clearly harmless. The jury verdict in this case was unanimous—twelve to none for Defendant. A vote of ten members would have been sufficient. If the trial court had refused to restore Defendant's peremptory challenge, there still would have been eleven votes for the Defendant. Even if one other juror changed his mind and voted for Plaintiffs, the result still would have been a ten-to-one verdict for Defendant. The harmless error rule specifically applies to errors in granting or refusing peremptory challenges. In order to secure a reversal, the complaining party must show that the error made the trial materially unfair. *Lorusso v. Members Mut. Ins. Co.,* 603 S.W.2d 818, 820 (Tex.1980); *Perkins v. Freeman,* 518 S.W.2d 532 (Tex.1974); *Tamburello v. Welch,* 392 S.W.2d 114 (Tex. 1965). Plaintiffs have not made such a showing here.

Plaintiffs cite *Batiste v. State,* 888 S.W.2d 9, 13–14 (Tex.Crim.App.1994), to argue that the harmless error rule does not apply in *Batson* cases, but that case does not support their position. In *Batiste,* the Texas Court of Criminal Appeals assumed, without deciding, that a "*Batson* error" is not amenable to a harm analysis.

But the kind of *Batson* error the court was speaking about in *Batiste,* and the error that was present in that case, was the error of an ineffective trial counsel failing to preserve error and thus allowing a jury that was selected by racially discriminatory methods to sit in judgment of a case. That did not occur in this case. The jury was not selected by racially discriminatory means. The alleged error was in allowing the defense the full complement of strikes allowed by law—not the allowance of a jury selected by discriminatory means to decide the case.

For all the reasons stated, we overrule Plaintiffs' contentions and affirm the judgment.