

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00037-CR

_____

KENNETH GRAY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 12F0430-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Kenneth Gray, Jr., had a decidedly negative reaction when he saw his ex-girlfriend, Rebecca Block, appear at a house of some mutual friends with her new boyfriend, Roderick Hale.[1] The hail of gunfire that followed resulted in three charges against Gray, burglary of a habitation with intent to commit assault and twin charges for aggravated assault with a deadly weapon, one for his allegedly shooting at Block, the other for shooting at Hale. A Bowie County jury convicted Gray only of assaulting Hale,[2] and Gray appeals. We affirm Gray's conviction because (1) no *Batson*[3] error has been demonstrated, (2) admitting evidence of domestic violence was within the trial court's discretion, and (3) the claimed jury instruction error was not preserved.

*(1)    No Batson Error Has Been Demonstrated*

Gray contends that the trial court's improper resolution of his *Batson* claim requires reversal. The State made peremptory challenges against all three of the African-Americans on

---

[1]Gray's multi-year relationship with Block had recently come to a bitter end. Gray had longtime friends who were relatives of Block. While Gray was at his friends' house, Block appeared with her new boyfriend in tow. From that point, things went badly. There is evidence that Block and Hale arrived to find Gray inside the house. Block testified that, on seeing the new couple, Gray ran out the back door, but then came back in through the front door, and the shooting started. Many shots were fired. Early on, none hit. Gray retreated back into the yard, but Hale continued to shoot until Gray was finally hit, wounded, and ran away.

The circumstances of this case were blurred by inaccuracies in Hale's and Block's statements and their efforts to hide Hale's use of two pistols during the event. Police uncovered the inaccuracies when they realized that three different caliber weapons were used during the shootout in the house, but Hale claimed to have none. They found two guns and shell casings from the shootout that Hale and Block had hidden. Hale is a convicted felon, thus possession of a firearm was itself an offense. The firearm used by Gray was not recovered.

[2]The jury assessed Gray's punishment at ninety-nine years' imprisonment and imposed a $10,000.00 fine, and the trial court sentenced him accordingly.

[3]*Batson v. Kentucky*, 476 U.S. 79 (1986).

2

the panel, jurors numbered nine, eighteen, and twenty-nine. Gray raised a claim under *Batson* and asked the trial court to dismiss the panel.

A party is prohibited under the Equal Protection Clause from using peremptory challenges to exclude otherwise qualified and unbiased persons from a jury solely on the basis of their race. *Batson*, 476 U.S. at 88; *see* TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006). A *Batson* challenge calls for a three-step process. *Ford v. State*, 1 S.W.3d 691, 693–94 (Tex. Crim. App. 1999). First, the party challenging the strike must make a prima facie case of discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. *Batson*, 476 U.S. at 93–94. The burden then shifts to the proponent of the strike to make a reasonable race-neutral explanation for the strike. *Id.*; *Williams v. State*, 937 S.W.2d 479, 485 (Tex. Crim. App. 1996). As long as no discriminatory intent is inherent in the explanation given, the explanation need not be persuasive or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768 (1995); *Williams*, 937 S.W.2d at 485. Third, if the proponent of the strike produces a race-neutral reason for the strike, the party making the challenge shoulders the burden of proving intentional discrimination. *Purkett*, 514 U.S. at 768; *Williams*, 937 S.W.2d at 485. "At that stage, 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (quoting *Purkett*, 514 U.S. at 768). The trial court must determine whether the party making the challenge carried the burden of persuasion by proving purposeful discrimination. *Id.*; *Purkett*, 514 U.S. at 767.

3

In reviewing a ruling on a *Batson* challenge, we review the record in the light most favorable to the trial court's ruling to determine whether the trial court abused its discretion in denying the challenges. *Davis v. State*, 329 S.W.3d 798, 815, 817 (Tex. Crim. App. 2010). Although we review the evidence in the light most favorable to the court's decision, the statements made by the State's counsel are not evidence and, although they will be considered as the State's explanations, will not be treated as evidence.

After listening to the arguments of counsel, the trial court overruled Gray's *Batson* challenge as to jurors nine and twenty-nine, but sustained the challenge as to juror eighteen. The trial court returned juror eighteen to the panel rather than dismissing the entire panel.

The State claimed juror nine said she knew the defendant's mother and some of her children went to school with some Grays.[4] Here, the State inaccurately recounts the actual statement made by the juror. The juror actually said that she thought she knew the mother because she thought her daughter went to school with some Grays.

The State explained to the trial court that juror twenty-nine was struck because "she said that people shouldn't have guns. Even if they're felons, they shouldn't have guns." That explanation inaccurately recounted that juror's statements, as well. Juror twenty-nine correctly guessed that convicted felons should not own firearms. The State also explained that it struck juror twenty-nine because she had stated that she knew the brother of defense counsel.

---

[4]Quoting from the State's explanation, "As far as No. 9 goes, we actually discussed striking her for cause because she said very clearly in the front row that she knew the defendant's mom and that her kids had gone to school with some Grays. And that's a reason to strike anybody."

The trial court accepted the State's reasons for striking jurors nine and twenty-nine. In both instances, the State provided non-racially based reasons to strike that were facially legitimate. However, in both instances the State also inaccurately summarized the content of statements those jurors made during voir dire in a way that made the State's explanations much stronger than they really were.

The State's explanation of its strike of juror nine is, on its face, quite ordinary and entirely supportable. Striking a juror because he or she knows the family of the defendant is often done and is also not a racially motivated reason for the strike. The question as set out by Gray, however, is whether the State's inaccurate summary of the juror's statements shows that the State was scrambling for a pretext to explain its otherwise unlawful strike.

Although we acknowledge the inaccuracy of the State's rendition, we do not find the erroneous statement controlling because even the much less compelling version actually shown by the panelist's statement provides a race-neutral reason for the strike of juror nine.

The State's explanation of its strike of juror twenty-nine is on its face also quite supportable—a prosecution involving a gunfight between two shooters might be derailed by a juror who believes no one should have a gun. In this case, based on the inaccuracies, one might legitimately suspect the motivation of the State. However, that is not the only reason given. The State also relied on the panelist's statement that she knew the brother of defense counsel.

Even discounting the first reason given as unsupportable, the second reason is an explanation that is both supported by the record and race-neutral. We find that the trial court did

5

not abuse its discretion by concluding that the reasons given for striking juror nine did not violate *Batson*.

As to juror eighteen, the State's explanation was that this juror did not pay attention during voir dire. But the trial court discounted that reason and put juror eighteen back on the panel. Gray argues that this remedy is improper because the statute requires a different remedy, dismissing the panel. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261. Gray claims we should thus reverse.

We have previously recognized that *Batson* explicitly avoids making a particular remedy mandatory. *Batson*, 476 U.S. at 99; *Boones v. State*, 170 S.W.3d 653, 656 (Tex. App.—Texarkana 2005, no pet.). The sole remedy provided by Article 35.261 of the Texas Code of Criminal Procedure is the dismissal of the entire panel.[5] That statute has been discounted by the Texas Court of Criminal Appeals, however, because it "may be unconstitutionally restrictive." *State ex rel. Curry v. Bowman*, 885 S.W.2d 421, 424 (Tex. Crim. App. 1993). The court reasoned that dismissing the entire array is "not a just and reasonable vindication of a prospective juror's right" and held that, notwithstanding the mandatory language of the statute, the trial court "may fashion a remedy in its discretion consistent with *Batson* and its progeny." *Id*. at 425. In *Bowman*, the court held that the decision to reinstate the excluded veniremembers to the jury was an acceptable remedy. *Id*.; *see Craig v. State*, 82 S.W.3d 451, 453 n.1 (Tex. App.—Austin 2002, pet. ref'd). The trial court's reinstatement of juror eighteen was an acceptable remedy. Thus, no error is shown in that respect.

---

[5]That Article provides, "If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case." TEX. CODE CRIM. PROC. ANN. art. 35.261(b).

In connection with the *Batson* challenge, Gray contends that error is shown because defense counsel was not given an opportunity to show how the prosecutor's stated reasons were unsupportable. *See Yarborough v. State*, 947 S.W.2d 892, 906–07 (Tex. Crim. App. 1997) (under *Batson*, defendant to be allowed opportunity to rebut State's explanation and show court why prosecutor's stated reasons indicate bad faith). However, after reviewing the interactions surrounding this discussion, we find no indication that counsel was denied an opportunity to engage in such questioning. Instead, when offered a general chance to respond, counsel stated that he was standing on his previous argument and indicated no desire to question the State. Under these facts, this complaint has not been preserved for our review. *See* TEX. R. APP. P. 33.1.

*(2)    Admitting Evidence of Domestic Violence Was Within the Trial Court's Discretion*

Gray contends that the trial court erroneously allowed the State to introduce inadmissible character evidence at the guilt phase of the trial. In the complained-of testimony, the State asked Gray's former girlfriend, Block, if Gray had ever physically abused her. Counsel's objection was overruled, as was his follow-up objection asking the court to perform the required balancing test between prejudice and probative value. *See* TEX. R. EVID. 403.

Counsel obtained a running objection to the entire line of testimony. Block testified that Gray had blacked her eyes several times, kicked her, and beat her, and that, after their breakup, he had kicked in the door of her friend's house, dragged her out by the hair, and deposited her in the back of his car. The State initially appeared to have no particular interest in questioning this witness about the events for which Gray was being prosecuted. But the State quickly barreled

7

directly into questions asking if Gray had "on several occasions" physically abused her. The State questioned her at length about specific acts and concluded by asking her whether she considered this to have been an abusive relationship.

After laying the groundwork about Gray's abusive nature with the jury and then covering the area again, the State then began questioning her about the days leading up to the incident and finally about the incident itself.

Gray argues that the trial court erred in admitting the evidence because it has no relevance apart from character conformity. *See* TEX. R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Rule 404(b) prohibits the use of extraneous bad acts to prove the defendant acted in conformity therewith, but allows the evidence if it is used "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." TEX. R. EVID. 404(b).

The State takes the position that the evidence about the prior relationship and physical altercations was admissible because it would show motive or criminal intent.

The simple end to a multi-year romantic relationship and Block's appearance with a new boyfriend could explain Gray's anger and even suggest to the jury that Gray had a motive for bad behavior. While evidence of prior violence toward Block runs the risk that the jury might find him guilty based simply on character evidence, it also helps explain his motive or intent at the time of this offense. It could help establish that the breakup motivated Gray to act violently toward Block and by extension toward the boyfriend who had taken his place, beyond the

8

tendency of the evidence to show Gray's inclination toward violence. Because there was a reason that would justify admission of the evidence, we are not prepared to say that the trial court was outside the zone of reasonable disagreement by admitting the evidence.

*(3)      The Claimed Jury-Instruction Error Was Not Preserved*

Gray next contends that the court erroneously commented on the weight of the evidence when it instructed the jury about the admission of State's Exhibit 80—a picture of a revolver. The gun in the photograph was not identified as Gray's gun, but a witness testified that it was the type of gun he was carrying. In an effort to limit the jury's consideration of Exhibit 80, the trial court instructed jurors that the gun in the photograph "may be similar to the one that [Gray] used." Here, counsel argues that the trial court commented on the weight of the evidence by informing the jury that a revolver was used in the crime and that Gray used a revolver in the crime. The instruction did assume that Gray used a gun similar to the one in the photograph, thus commenting on the weight of the evidence.

The record reveals, however, that trial counsel made no objection to the instruction given. The only objection relative to Exhibit 80 was to the photograph itself and made the point that it was never identified as—and, in fact, did not portray—the actual gun used in the crime. Generally, a claim that the trial court erred by commenting on the weight of the evidence during trial or while ruling on evidentiary matters must be preserved by objection before we may consider it. *Woods v. State*, 569 S.W.2d 901 (Tex. Crim. App. 1978); *Morgan v. State*, 365 S.W.3d 706, 710 (Tex. App.—Texarkana 2012, no pet.). A failure to object to an instruction that

9

is later claimed to be faulty fails to preserve the claimed issue for our review. *See Young v. State*, 382 S.W.3d 414, 422 (Tex. App.—Texarkana 2012, pet. ref'd). We overrule this point.

We affirm the judgment of the trial court.


                                    Josh R. Morriss, III
                                    Chief Justice

Date Submitted:      October 14, 2013
Date Decided:        January 2, 2014

Do Not Publish