ACCEPTED
01-14-00660-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/27/2015 3:31:53 PM
CHRISTOPHER PRINI
CLERK

# NO. 01-14-00660-CR

# IN THE COURT OF APPEALS

## FIRST DISTRICT

## HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/27/2015 3:31:53 PM

CHRISTOPHER A. PRINE
Clerk

# NO. 1377034

# IN THE TRIAL COURT

# 230TH JUDICIAL DISTRICT

# HARRIS COUNTY, TEXAS

| | | |
|---|---|---|
| **RODASHIAN E. DEGAR** | § | **APPELLANT** |
| **VS.** | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

## BRIEF FOR APPELLANT

**ALLEN C. ISBELL**
**202 Travis, Suite 208**
**Houston, Texas 77002**
**713/236-1000**
**Fax: 713/236-1809**
**STATE BAR NO. 10431500**

**COUNSEL ON APPEAL**

# NAMES AND ADDRESSES OF ALL PARTIES
# AT THE TRIAL COURT'S FINAL JUDGMENT

## Trial Judge

Honorable Jay Burnett, Judge Presiding
230th District Court
1201 Franklin, 16th Fl., Houston, Texas 77002

## Appellant/Defendant

Mr. Rodashian E. Degar
#01944140
Luther Unit
1800 Luther Dr., Navasota, Texas 77868

## Appellant's Counsel

Mr. Allen C. Isbell - Counsel on Appeal
202 Travis, Suite 208, Houston, Texas 77002

Ms. Lisa Kay Andrews - Counsel at Trial
1207 S. Shepherd, Houston, Texas 77019

Ms. Wendy Baker - Counsel at Trial
21 Waterway, #300, The Woodlands, Texas 77380

## Attorneys for the State of Texas

Mr. Alan Curry - Assistant District Attorney on Appeal
1201 Franklin, Ste. 600, Houston, Texas 77002

Ms. Lauren Bard - Assistant District Attorney at Trial
1201 Franklin, 6th Fl., Houston, Texas 77002

# TABLE OF CONTENTS

**PAGE**

Names and Addresses of All Parties at the Trial Court's Final Judgment
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . iv

Statement of the Nature of the Case . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Point of Error Number One**
**The trial court abused its discretion in refusing to dismiss the array pursuant to *Texas Code of Criminal Procedure*, Art. 35.261 after the trial court found that the State had committed a "Batson" violation, and appellant objected to the only non-statutory remedy formulated by the trial court, and appellant objected to the jury panel which is the statutory remedy when a "Batson" violation occurs.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of Facts Point of Error Number One . . . . . . . . . . . . . . . 7

Summary of the Argument Point of Error Number One . . . . . . . . . . . 9

Argument and Authorities Point of Error Number One . . . . . . . . . . . 9

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INDEX OF AUTHORITIES

**<u>CASES</u>** **<u>PAGE</u>**

*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-12

*Boones v. State,* 170 S.W.3d 653 (Tex. App. Texarkana 2005; writ of
mandamus denied 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Saldivar v. State*, 980 S.W.2d 475 (Tex. App. Houston [14th Dist.] 1998,
pet.ref'd . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State ex rel. Curry v. Bowman,* 885 S.W.2d 421 (Tex. Crim. App. 1993)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**<u>STATUTES</u>**

*Texas Code of Criminal Procedure*, Art. 35.261 . . . . . . . . . . . . . . 7, 10-12

# <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is waived.

**TO THE HONORABLE COURT OF APPEALS:**

COMES NOW RODASHIAN E. DEGAR, appellant, by and through his appointed attorney of record, ALLEN C. ISBELL, and files this Brief in support of his prayer for reversal of his conviction.

## Statement of the Nature of the Case

This is an appeal arising from a conviction for Murder in the 230th District Court of Harris County, Texas, the Honorable Jay Burnett, Visiting Judge Presiding. The jury found appellant guilty. The judge sentenced appellant to twelve (12) years imprisonment, in the Texas Department of Criminal Justice, Institutional Division. No Motion for New Trial was filed. Appellant gave written Notice of Appeal on July 29, 2014.

## Statement of Facts

At approximately 1 p.m. on May 15, 2012, Houston homicide investigator Jeffrey Rexroad accompanied Sergeant Jeff Rohling to the scene of a shooting at Beran and Quentin Drive in Houston, Harris County, Texas. The complainant, Chase Walker, had been found in the street. He had been shot. The police learned the description of the suspect's vehicle, and they learned that possibly four black males were involved in this homicide. Nearby, the police found a 9 mm handgun, $509 in cash, an iPad, the victim's wallet

and a cell phone.  The police obtained a search warrant to retrieve the data from the cell phone.  This data led police to an apartment complex called Cuney Homes near Yates High School (R.R. 3 111-116, 122-124, 129, 185).

The managers at the complex identified a picture on the phone as Ashley Johnson, who lived in the complex with a man named Bobby Pal.  The police went to their apartment.  The police recovered a .45 caliber handgun from the apartment.  Ashley Johnson identified the phone as belonging to her brother, Kenya Jackson.  Jackson gave the police the name of Anthony Duhon.  Duhon gave the police the name of Maurice White.  White gave police the name of Rodashian Degar, the appellant (R.R. 3, 128-131).

The police learned that the shooting had occurred in the backseat of a green, 4-door Pontiac which was being driven by Maurice White.  Kenya Jackson sat in the front passenger seat.  Anthony Duhon sat behind the driver and appellant sat behind Kenya Jackson.  At one point, the complainant, Chase Walker, got into the back seat behind the driver.  This made Anthony Duhon move towards the center of the back seat (R.R. 3, 132-133).

Chase Walker survived for approximately 22 hours after being shot.  The hospital did not perform any toxicology tests prior to fluids and blood transfusions being administered in an attempt to save Walker's life.  By the

time Dr. Mary Lynn Anzolone performed an autopsy on May 17, 2012, she did not have any good samples to submit for tests. Her examination of the body revealed a single gunshot wound to the head, and minor abrasions on Walker's arm, thigh, knee and shin which were consistent with him falling out of a vehicle onto pavement. She recovered a bullet and two fragmented pieces. Dr. Anzolone determined the cause of death to be a gunshot wound to the head and classified the death as a homicide (R.R. 3, 27, 38-48, 54-55).

The police recovered the vehicle which Maurice White drove. White's father had taken the vehicle to a paint shop to be repainted. April Palatino with the Houston Police Department Crime Scene Unit, examined the vehicle on May 31, 2012. She discovered that it had been green in color, but was recently and hurriedly repainted white. Although the car had been cleaned, Luminal spray revealed the presence of blood in the backseat area behind the driver's seat . Samples of the blood stained areas in the vehicle matched the complainant's DNA (R.R. 3, 95-101, 103, 134-135).

On January 30, 2013, Officer Rexroad obtained pocket warrants for Maurice White, Kenya Jackson, Anthony Duhon and appellant for tampering with evidence. Appellant gave a recorded statement in which he admitted that he shot Chase Walker with a Glock 17 handgun. But, appellant maintained

that he had acted in self-defense or in defense of the others (R.R. 135-151, 165-166, 188-189).

The primary witness against appellant at trial was Maurice White. White testified that on May 15, 2012, he left school without permission to do something for his mother. Anthony Duhon called him from school around noon, and asked White to take him to buy some marijuana. White agreed. He picked up Duhon, Kenya Jackson and appellant at the back of the school. White knew that Duhon had money to buy marijuana for himself, and he knew that appellant had about $300 to purchase marijuana for himself and Kenya Jackson. Maurice was to be paid money for gas (R.R. 3, 13-20).

Chase Walker's friend, Phillip Green, testified that they were smoking marijuana when Chase received several phone calls. Green heard Chase discuss selling marijuana to someone. Green drove Chase home between noon and 1:00 p.m. (R.R. 4, 119-122).

White drove to a house where the complainant was standing in the driveway, flagging them down. After grabbing a backpack from his truck, Chase Walker got into the backseat of White's vehicle. He let the others smell the marijuana he had in a glass jar. Walker told White to drive slowly around the block as he and the others discussed amounts and price. Duhon became

upset, saying that he was not going to pay that much for marijuana. This annoyed Walker because Walker and Duhon had discussed the price over the phone (R.R.4, 28, 88-89).

At this point a scale that had been placed on the middle console fell beneath White's seat. As White reached for the scale, he heard appellant say, "Nigger, get out of the car." In his statement to the police, White said that when he glanced into the back seat he saw Chase Walker pull a gun out of his backpack, and he saw Duhon grab Walker's arm in a struggle over the gun. He heard a gunshot, but he was no longer looking into the backseat. When he glanced back again, he saw Chase Walker in the corner with his head down and bleeding. Both Anthony Duhon and appellant looked to be in shock (R.R. 4, 30-32, 67-70, 74, 95).

White's vehicle automatically locked the back doors when the vehicle is moving. So, no one could get out of the backseat area while the vehicle was moving. After hearing the gunshot, White slowed down and hit "the unlock button." When the vehicle stopped, Jackson and appellant got out and ran a short distance away. White got out and opened the rear passenger door. This caused Chase Walker to fall half-way out of the vehicle. White pulled Walker's legs out and closed the door. Then, everyone got back into the

vehicle and drove away, leaving Chase Walker lying in the street.   White

dropped Jackson and appellant off near the high school.  Jackson took the

glass jar of marijuana with him, which he later sold.  Jackson brought the

money to White.   White and Duhon went to Duhon's house to clean the car.

When White told his father what had happened, his father said he would take

care of things.  The next day, appellant told White that he only did what he

had to do because Chase Walker had pulled a gun on him, and appellant was

trying to protect himself and the others (R.R. 4, 25-26, 32-36, 38-44, 57, 67-

70, 80-82, 93).   At trial White testified that he never actually saw Chase

Walker reach into the bag for a gun, and that he could not testify as to who

pulled a gun first.  He did, however, reiterate that both Duhon and appellant

told him that Chase Walker pulled out a gun first, and that is why appellant

pulled his gun.  White testified that he did see Duhon struggling with Chase

Walker over a gun (R.R. 4, 74).

Firearms expert, Donna Eudaley, examined the bullet and fragments

recovered during autopsy and the two firearms, a .45 caliber handgun found

at the apartment of Ashley Johnson and Bobby Pal, and the firearm found on

the street near Chase Walker (R.R. 4, 103-104).  She found that the bullet

was a member of the .38 caliber/9 mm family.  The land and groove markings

were consistent with a Glock 17 firearm which appellant said he had used (R.R. 4, 107-110). She determined that the .45 caliber handgun had nothing to do with the shooting of Chase Walker (R.R. 4, 103), and that the firearm found near Chase Walker did not fire the bullet that caused Walker's death (R.R. 4, 113-115).

**Point of Error Number One**

**The trial court abused its discretion in refusing to dismiss the array pursuant to *Texas Code of Criminal Procedure*, Art. 35.261 after the trial court found that the State had committed a "Batson" violation, and appellant objected to the only non-statutory remedy formulated by the trial court, and appellant objected to the jury panel which is the statutory remedy when a "Batson" violation occurs.**

**Statement of Facts
Point of Error Number One**

After the voir dire and each party had made its peremptory strikes, the trial court called the names of the first twelve people who had not been struck by either side. The trial court asked if there were any objections to these twelve people being impaneled as jurors. Appellant's counsel objected because the State had struck numbers 15, 16 and 29 in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (R.R. 2, 142,

146-147; C.R. I, 88, 91).

After hearing the State's reasons for striking these jurors, and after questioning juror number 15, the trial court upheld the *Batson* challenge with regard to juror number 15. The trial court found that the reasons which the State gave for striking number 15 were reasons which the State found unobjectionable with regard to juror number 45, an African-American woman who had been the twelfth person called to be seated on the jury.

Having found a "Batson" violation, the trial court proposed to seat number 15 as a juror, and remove number 45 from the jury. Appellant's trial counsel objected to the trial court's proposed remedy because it would remove an African-American woman from the jury. Appellant requested the only statutory remedy for a "Batson" violation:

> THE COURT: I will grant the *Batson* and seat the juror. That's it.
>
> MS. ANDREWS: Okay. So, we seat her and then what do we do after that?
>
> (Off the record discussion)
>
> MS. ANDREWS: I would object to the panel - - the proposed remedy is to seat Juror No. 15, which then removes Juror Number 45 who is also an African-American female. So, I would object to the panel with that remedy.
>
> THE COURT: Okay. That's overruled (R.R. 2, 142-

143, 147-154).

## Summary of the Argument
## Point of Error Number One

The trial court sustained the defendant's "Batson" objection to jury panel number 15. The trial court proposed a non-statutory remedy. That remedy was to put number 15 on the jury which would bump another African-American female off the jury. Appellant did not acquiesce in this proposed non-statutory remedy, and objected to the panel array.

A non-statutory remedy to a *Batson* violation is permitted, if the defendant acquiesces in the remedy. This case involves the novel issue whether the statutory remedy should be applied, if the defendant objects on good grounds to the non-statutory remedy proposed by the trial court.

## Argument and Authorities
## Point of Error Number One

The *Batson* challenges were timely. The jury was not sworn until after the trial court had ruled on the *Batson* challenges. See and compare: *Saldivar v. State*, 980 S.W.2d 475 (Tex. App. Houston [14th Dist.] 1998, pet. ref'd).

The issue before this court is the proper remedy when the court has sustained a *Batson* challenge by the defense, and the defense counsel does not acquiesce in the non-statutory remedy formulated by the court for good reasons, and objects to the jury panel which is the statutory remedy.

The *Texas Code of Criminal Procedure,* Art. 35.261 prohibits a peremptory challenge based on race, and it provides the remedy if this statute is violated by the attorney representing the State.

**Article 35.261.  Peremptory Challenges Based on Race Prohibited**

(a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case.  The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race.  If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

In *State ex rel. Curry v. Bowman,* 885 S.W.2d 421 (Tex. Crim. App. 1993), the Court of Criminal Appeals addressed whether the mandatory remedy contained in *Texas Code of Criminal Procedure,* Art. 35.261(b) is exclusive, if the trial court sustains a *Batson* challenge and the defendant acquiesces in a non-statutory remedy.  In that case, the State wanted the

Court of Criminal Appeals to mandamus the trial judge to comply with the mandate of this statute, rather than order two of the struck venire members reinstated to serve as jurors.

The issue was whether the prosecution is entitled to the dismissal of the array pursuant to Article 35.261, when a defense *Batson* motion has been sustained and the defendant acquiesces to a remedy other than the one prescribed by statute.

The Court of Criminal Appeals noted that the United States Supreme Court in *Batson* did not prescribe a particular remedy but left it to state and federal courts to fashion their own remedy. To codify and implement *Batson* in Texas, the Legislature enacted Article 35.261 and elected that the sole remedy would be to discharge the jury and call a new array. *Id., at* 424. The Court of Criminal Appeals noted that the defendant based his objection upon the equal protection rights of the excluded jurors. The defendant did not expressly assert any statutory rights. Also, the Court noted that the defendant had suggested an alternative remedy:

> "The State had three peremptory challenges and used all of their peremptory challenges on black males on the jury panel. And I move that you quash the panel or otherwise disallow their strikes."
> Id., at 424

The Court of Criminal Appeals concluded that because the defendant

had requested an alternative relief not available under the statute, he was not relying solely on Article 35.261. The Court of Criminal Appeals held that where a *Batson* claim is sustained the trial court may fashion a remedy, in its discretion, that is  consistent with *Batson* and its progeny, if the defendant acquiesces in the non-statutory remedy.  Similarly, in *Boones v. State,* 170 S.W.3d 653 (Tex. App. Texarkana 2005;  writ of mandamus denied 2007), the trial court granted the defendant's *Batson* challenge, and the defendant acquiesced in the trial court's remedy.

The instant case is distinguishable.  Appellant did not acquiesce in the Court's proposed remedy for a very good reason.  The proposed remedy would have removed another qualified African-American woman from the jury, whom the appellant preferred to sit as a juror.  The proposed remedy allowed the State to violate *Batson* with impunity.  Defense counsel faced a "Hobson Choice," either lose a preferred African-American female juror or waive the *Batson* error (R.R. 2, 154).  Under the circumstances in this case, the trial court's only  non-statutory remedy was not appropriate.  The trial court should have dismissed the panel, which is the statutory remedy requested by appellant.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, appellant prays that the judgment of conviction be reversed and the cause remanded for new trial.

Respectfully submitted,

/s/ Allen C. Isbell
ALLEN C. ISBELL
202 Travis, Suite 208
Houston, Texas 77002
713/236-1000
Fax: 713/236-1809
email: allenisbell@sbcglobal.net
STATE BAR NO. 10431500

COUNSEL ON APPEAL

## Certificate of Service

I hereby certify that on this 27th day of January, 2015, a true and correct copy of the foregoing Brief for Appellant has been sent to the District Attorney's Office, Appellate Division, and to Mr. Rodashian E. Degar, appellant.

/s/ Allen C. Isbell
ALLEN C. ISBELL

## Certificate of Compliance

The undersigned attorney on appeal certifies this brief is computer generated and consists of 3,261 words. Counsel is relying on the word count provided by the Word Perfect computer software used to prepare the brief.

/s/ Allen C. Isbell
ALLEN C. ISBELL